■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REGINALD PARKER, Appellant. [736 NYS2d 162] —Carpinello, J. Appeal from a judgment of the County Court of Schenectady County (Tomlinson, J.), rendered November 13, 1997, upon a verdict convicting defendant of the crimes of murder in the first degree, murder in the second degree (two counts), robbery in the first degree (five counts), robbery in the second degree (two counts), conspiracy in the fourth degree (two counts), bribing a witness, hindering prosecution in the first degree (two counts) and assault in the second degree.

Defendant stands convicted of 16 offenses following a jury trial, the most serious of which is murder in the first degree pursuant to Penal Law § 125.27 (1) (a) (vii).[1] Six of the offenses for which he stands convicted (three counts of robbery in the first degree and one count each of robbery in the second degree, assault in the second degree and conspiracy in the fourth degree) stem from evidence that defendant and five others agreed to rob Gavir Amador of cash and drugs at gunpoint in his home. The six carried out this plan and, during the course of the robbery, defendant struck Amador in the head with a gun. Seven of the offenses (murder in the first degree, two counts each of murder in the second degree and robbery in the first degree and one count each of robbery in the second degree and conspiracy in the fourth degree) stem from evidence that, within hours of the Amador robbery, defendant and three others agreed to rob Philton Green of cash and drugs, again at gunpoint, in his home. This foursome also succeeded in carrying out their plan and, during the course of this robbery, defendant shot Green four times fatally wounding him. The remaining offenses (bribing a witness and two counts of hindering prosecution in the first degree) stem from evidence that defendant offered a witness money to provide him with a false alibi for both incidents and that he lied to police about the identity of the actual participants in the Green robbery and murder. With respect to the murder in the first degree conviction, County Court sentenced defendant to life in prison without parole (see, CPL 400.27 [1]). Defendant appeals.

Before the police and the People were even aware of the Amador armed robbery and assault, defendant was charged in a nine-count indictment based solely on the Green robbery and

---

**1.** From the onset of this prosecution, the People opted not to seek the death penalty against defendant.

murder and his attempts to bribe a witness.[2] While this indictment was pending, defense motions for *Wade* and *Huntley* hearings were granted. Following a combined hearing, County Court (Harrigan, J.H.O.) determined that certain identification procedures, as well as defendant's statements to police, were indeed admissible.

Thereafter, however, the People learned of the Amador robbery prompting them to re-present the case to the grand jury, which then returned a 30-count superceding indictment containing the original nine counts, plus murder in the first degree, additional counts of murder in the second degree and various counts pertaining to the newly-discovered Amador robbery and defendant's efforts to hinder prosecution. During the course of this superceding indictment, defense counsel again sought suppression of identification testimony and defendant's oral and written statements to police. On the day the matter was scheduled for the second combined hearing, however, defense counsel stated on the record in open court, in the presence of defendant, that after consulting with the prosecutor, he believed that there was no need to conduct such hearing inasmuch as "there [were] no new issues to be determined." The prosecutor agreed and defendant voiced no objection. Defendant now claims that the failure to obtain his express consent to waive this hearing deprived him of the right to make fundamental decisions about his defense. We disagree.

To be sure, criminal defendants retain authority over various fundamental decisions pertaining to their cases (*see, Jones v Barnes*, 463 US 745, 751; *People v Colon*, 90 NY2d 824, 825-826). "With respect to strategic and tactical decisions concerning the conduct of trials, by contrast, defendants are deemed to repose decision-making authority in their lawyers" (*People v Colon, supra*, at 826). Said differently, "[b]y accepting counseled representation, a defendant assigns control of much of the case to the lawyer, who, by reason of training and experience, is entrusted with sifting out weak arguments, charting strategy and making day-to-day decisions over the course of the proceedings" (*People v Rodriguez*, 95 NY2d 497, 501-502; *see, People v Jordan*, 96 AD2d 1060, 1061, *affd* 62 NY2d 825). The decision to forego a duplicate suppression hearing as superfluous is precisely the type of day-to-day decision making over which an attorney, in his or her professional judgment, retains sole authority (*compare, People v Colon, supra* [jury selection involves tactical decisions entrusted to attorney]; *People v Fer-*

---

2. The sole murder count in this first indictment charged defendant with murder in the second degree.

*guson*, 67 NY2d 383 [decision to consent to a mistrial is reserved to attorney]; *People v Trepasso*, 197 AD2d 891, *lv denied* 82 NY2d 854 [decision concerning waiver of statutory speedy trial right is reserved to attorney]; *People v Johnson*, 150 Misc 2d 1024 [decision to waive operation of CPL 180.80 is reserved to attorney], *with People v Petrovich*, 87 NY2d 961 [decision to request submission of extreme emotional disturbance defense to jury falls to the defendant]).

Defendant's remaining contentions do not warrant extended discussion. We are unpersuaded that brief, undetailed testimony that defendant has "a very old" injury on his knee as a result of being "shot once in the leg" deprived him of a fair trial by suggesting to the jury that he was "an inveterate gunfighter" or that such evidence should have been the subject of a *Ventimiglia* hearing. Suffice it to say, it is not a crime, or even a prior vicious, immoral or bad act, to have been shot on an unrelated occasion in the past (*see, People v Kelly*, 156 AD2d 719, *lv denied* 75 NY2d 920). Nor does evidence of an old injury tend to show that the *victim* of same is himself a gunfighter.

Defendant's claim, raised for the first time on appeal and apparently without notice to the Attorney General (*see,* Executive Law § 71), that CPL 400.27 (1) is unconstitutional is unpreserved for this Court's review (*see, People v Maisonet*, 265 AD2d 835, *lv denied* 94 NY2d 825; *see also, People v Ruz*, 70 NY2d 942; *People v Ingram*, 67 NY2d 897; *People v Marrero*, 278 AD2d 135; *People v Fiorvante*, 108 AD2d 925; *People v Thomas*, 108 AD2d 884). Lastly, given the nature of defendant's crimes and his prior criminal record, his sentence for first degree murder is neither harsh nor excessive (*see, People v Maisonet, supra*). We have reviewed all remaining claims, including those contained in defendant's pro se appellate brief, and find them to be without merit.

Mercure, J.P., Crew III, Peters and Mugglin, JJ., concur. Ordered that the judgment is affirmed.