[979 NE2d 1125, 955 NYS2d 799]

The People of the State of New York, Respondent, v Delroy
Colville, Appellant.

Argued September 6, 2012; decided October 23, 2012

**POINTS OF COUNSEL**

*Appellate Advocates*, New York City (*Lynn W.L. Fahey* of counsel), for appellant. I. By deferring to appellant's desire to

have no lesser-included offenses submitted to the jury, despite defense counsel's clearly-stated professional opinion to the contrary, the court denied appellant the benefit of counsel's expert tactical judgment, and therefore his constitutional rights to counsel and due process. (*Johnson v Zerbst*, 304 US 458; *Powell v Alabama*, 287 US 45; *Gonzalez v United States*, 553 US 242; *Jones v Barnes*, 463 US 745; *New York v Hill*, 528 US 110; *Taylor v Illinois*, 484 US 400; *Faretta v California*, 422 US 806; *People v Benevento*, 91 NY2d 708; *People v Colon*, 90 NY2d 824; *People v Davis*, 13 NY3d 17.) II. Appellant was denied a fair trial when the court charged the jury that he had a duty to retreat from an assault that began in the common kitchen area of the single-room-occupancy apartment in which he lived, but refused to charge that he did not have such a duty if the jurors found that he was in his dwelling. (*Payton v New York*, 445 US 573; *People v Tomlins*, 213 NY 240; *People v Aiken*, 4 NY3d 324; *People v Jones*, 3 NY3d 491; *People v Berk*, 88 NY2d 257; *People v Hernandez*, 98 NY2d 175; *People v Sullivan*, 7 NY 396; *People v Wesley*, 76 NY2d 555; *People v Primus*, 178 AD2d 565; *People v McCurdy*, 86 AD2d 493.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Anthea H. Bruffee* and *Leonard Joblove* of counsel), for respondent. I. Defendant received the effective assistance of counsel where counsel acquiesced in defendant's decision not to request the submission to the jury of lesser-included manslaughter counts. In any event, by knowingly, intelligently, and voluntarily choosing to request that those counts not be submitted to the jury, defendant waived any claim that he was denied either the effective assistance of counsel or due process by the nonsubmission of those counts. (*People v Benevento*, 91 NY2d 708; *People v Flores*, 84 NY2d 184; *People v Hobot*, 84 NY2d 1021; *People v Satterfield*, 66 NY2d 796; *People v Baldi*, 54 NY2d 137; *Strickland v Washington*, 466 US 668; *People v Rivera*, 71 NY2d 705; *People v Caban*, 5 NY3d 143; *People v Stultz*, 2 NY3d 277; *People v Colon*, 90 NY2d 824.) II. Defendant was not denied a fair trial by the court's decision not to give the jury a "no duty to retreat" instruction in the charge on justification because there was overwhelming evidence both that the stabbing did not occur in defendant's dwelling and that defendant's acts were unjustified, and there is no significant probability that the verdict would have been different but for the court's decision not to give such an instruction. (*People v Petty*, 7 NY3d 277; *People v Jones*, 3 NY3d 491; *People v Ginett*, 179 AD2d 1072; *People v Hernandez*, 98 NY2d 175; *People v Aiken*, 4 NY3d 324; *People v Mickens*,

219 AD2d 543; *People v Duren*, 234 AD2d 560; *People v Gopaul*, 171 AD2d 754; *People v Childs*, 21 AD2d 809; *People v Primus*, 178 AD2d 565.)

## OPINION OF THE COURT

READ, J.

We hold that the decision whether to seek a jury charge on lesser-included offenses is a matter of strategy and tactics which ultimately rests with defense counsel. At defendant Delroy Colville's trial for second-degree murder, the trial judge agreed with the defense attorney that a reasonable view of the evidence supported his request to submit the lesser-included offenses of first- and second-degree manslaughter to the jury. But contrary to defense counsel's request and repeated statements that, in his professional judgment, the lesser-included offenses should be given to the jury, the judge did not do so because defendant objected. The jury found defendant guilty of murder; we now reverse and order a new trial.

## I.

On October 28, 2004, defendant stabbed and killed Gregory Gardner with a chef's knife, which belonged to him, and sliced open the lip of another man, Carl Jones. This violence erupted on the third floor of a single-room occupancy brownstone-type duplex where defendant resided; defendant and the occupants of the four other bedrooms on the third-floor, one of whom was Jones, shared a kitchen and bathroom. In defendant's telling, he was confronted and attacked in the kitchen by Gardner, Jones's guest; and Gardner, a much younger and bigger man, repeatedly pummeled him in the head with a heavy glass ashtray, rendering defendant bloody and nearly unconscious and leading him, in fear for his life, to grab the knife from the kitchen sink counter to protect himself. In the ensuing struggle, as he and Gardner "tumbled all over the place," defendant stabbed Gardner and cut Jones's lip as he "flashed him off" with the knife.

Jones, his 11-year-old son and Abnor George, another third-floor resident, gave a markedly different account. None of these witnesses was present for the entirety of the encounter between defendant and Gardner. Additionally, Jones's girlfriend, who allegedly suffered a knife wound while trying to protect Gardner from defendant, apparently did not give a statement to the police, and was out of the country during defendant's trial. While

there was little dispute that Gardner hit defendant in the head with an ashtray, there was testimony that defendant was the aggressor; that George took the ashtray from Gardner and broke up the fight; that Gardner was headed peacefully to the hallway and down the stairs when defendant ran into his bedroom and emerged with the knife in hand; and that defendant set upon Gardner, plunging the knife into his left side, and injured Jones as he was attempting to wrest the knife away.

Gardner, bleeding profusely and mortally wounded, managed to make his way to the street before collapsing in front of a tree. The police, who arrived almost immediately, followed a trail of blood from Gardner into the building and up the staircase, encountering the injured Jones along the way. Jones identified defendant as the assailant, described what he was wearing and directed the police to the third floor. There, after forcing open the only bedroom door that was locked, they discovered defendant in the closet and arrested him. Defendant insisted that he had acted in self-defense. As the police were escorting him out of the house, defendant pointed out a mailbox in the vestibule, where he had stashed the knife. Later that evening defendant was taken to a hospital and his head wound was closed with seven stitches.

Defendant was subsequently indicted and tried before a jury for the crimes of second-degree murder for the killing of Gardner (Penal Law § 125.25 [1]), and second-degree assault for slashing Jones (Penal Law § 120.05 [2]). The trial record closed with defendant's testimony on the Friday before a three-day holiday weekend. At the conference immediately following, the judge announced his intention to charge justification with respect to the murder count, at the defense attorney's request. The attorney, stating that he had "discussed this with [defendant]," also asked the judge to charge the lesser-included offenses of first- and second-degree manslaughter (Penal Law §§ 125.20, 125.15), adding that he had "told [defendant] that, in [his] view, murder, alone, should not be submitted to the jury."

The judge, however, expressed the opinion there was "no reasonable view of the evidence . . . that would support the elements [of manslaughter], either reckless or intentional." The prosecutor agreed. After the defense attorney objected, the judge told him to raise the issue again when the trial resumed, noting that he was "not going to say this is written in stone, if you can convince me it's appropriate, but, at this point, I don't see it." Still, the judge added that he entertained "an inclination" to

view second-degree manslaughter as "potentially . . . appropriate," based on defendant's videotape statement to the police, which was shown to the jury, and "certain elements" of his just completed trial testimony. The judge advised that he would have such a charge ready.

The record, which picks up on the following Tuesday, establishes that in off-the-record discussions earlier that morning the judge had agreed to submit both lesser-included offenses to the jury, as the defense attorney requested; the prosecutor had "acquiesce[d]" to charging first-degree manslaughter; and the judge had prepared a verdict sheet that included both first- and second-degree manslaughter. The issue arose on the record again because defendant balked.

The defense attorney recounted that he had "spent the better part" of the three-day weekend "reviewing transcripts, evidence, preparing arguments, doing legal research" since he had indicated on Friday that he "wished lesser included charges to be charged to this jury"; namely, first- and second-degree manslaughter. He then advised the judge that defendant, "if I understand it correctly, does not wish those charges to go to the jury . . . [which] represents . . . a change of position." He added that "as the attorney here, I am only . . . as the Supreme Court has said, the guiding hand"; and that "[i]t is my opinion as a matter of strategy, trial strategy, and as a matter of sound practice, it is my opinion that lesser includeds should be submitted" so as to give the jury latitude. He observed that he was "trying to protect [defendant] here."

When the judge asked the defense attorney if he was "withdrawing" his request for lesser-included offenses to be given to the jury, the attorney replied "I am checking with the defendant." At that point, the judge responded that "[i]f that is where we are going, instead of using you, why don't I ask [defendant]." The judge questioned defendant directly and confirmed that he, indeed, did not want the jury to consider manslaughter. Defendant gave no reason for his stance; he simply conveyed a sense of resigned fatalism, lamenting that "[i]f the jury feels that I intentionally caused the death of Mr. Gardner, there is nothing I can do about it," and declaring that he was prepared for whatever decision the jury might make.

Hearing this, the defense attorney asked to confer with his client again. The judge agreed to give him five minutes, but pointed out that the jury was waiting and that "[w]e have gone

through this three times." The defense attorney countered "I understand, but I view this as so critical." At that point, the prosecutor jumped in, stating that the People requested a charge of first-degree manslaughter to "protect the appellate record." The judge, admonishing that he was "going to stop" the prosecutor right there, added "[t]hat is the last we are going to hear about it. I will have [the defense attorney] discuss with [defendant] whether or not he wants to include those lesser included offenses. If he does, we will come back in 5 minutes." With that, the judge directed the defense attorney to review the proposed charge, which included intentional and reckless manslaughter, with his client.

After the brief recess, the judge twice verified with defendant that he did not want the jury to consider first- and second-degree manslaughter. The defense attorney made clear that he had advised defendant against this course of action, explaining to him "that the punishment for murder exceeds greatly the punishment for the lesser included[s], and I know what my advice would be," to which the judge interjected "[i]t's actually what your advice was." The judge, after confirming with defendant yet again that he did not want the jury charged on the lesser-included offenses, advised "[s]o I am taking them out," and handed down a verdict sheet specifying two crimes only: second-degree murder and second-degree assault.

When the judge asked the defense attorney if he had reviewed the verdict sheet himself and shared it with defendant, the attorney replied affirmatively, and noted that he was "showing the verdict sheet to [defendant] with the two charges" because he "want[ed] to make sure it's satisfactory to him . . . [and] to make sure that [he] ha[d] discharged [his] ethical obligation" to his client. The judge reassured him that

> "we can't do any more than we have done. We have explained everything. The record is clear. We have included what [defendant] wants included. We have taken [out] what [defendant] wants taken out. The Court was willing to acquiesce to your request[, but a]t this point, we are going to go with murder 2 and assault 2."

The judge then asked the defense attorney if he had any objection to the verdict sheet, and the following exchange ensued:

> "[DEFENSE COUNSEL]: No. To the verdict sheet as it stands now, it doesn't give the jury all the charges that I requested.

"As far as any other objection; no.

"THE COURT: I don't want the record to be misleading at all. You have requested only 2 charges.

"[DEFENSE COUNSEL]: The defendant, through me, requested 2 charges.

"THE COURT: These are the 2 charges that you requested.

"[DEFENSE COUNSEL]: That's correct.

"THE COURT: Your advice was different.

"[DEFENSE COUNSEL]: Yes.

"THE COURT: But your request is these 2 charges?

"[DEFENSE COUNSEL]: My request is consistent with the defendant's request."

The judge next denied the defense attorney's application to instruct the jury, as part of the justification charge, that defendant did not have a duty to retreat if attacked in his dwelling (*see* Penal Law § 35.15 [2] [a] [i] [no duty to retreat where the accused is in his or her dwelling and is not the initial aggressor]). The judge rejected the attorney's argument that the third floor's common areas (e.g., the kitchen and/or the hallway) might constitute part of defendant's dwelling. In his view, defendant's dwelling was restricted under the facts of this case to his bedroom, his only private space.

After deliberating over the course of three days, the jury acquitted defendant of assault and convicted him of murder; Supreme Court subsequently sentenced defendant to prison for an indeterminate term of 22 years to life. Upon defendant's appeal, the Appellate Division unanimously affirmed (79 AD3d 189 [2d Dept 2010]).

Addressing first whether the decision to ask for lesser-included offenses was "strategic," and therefore entrusted to the attorney, or "fundamental," and so reserved to the accused, the Appellate Division remarked that courts in various jurisdictions had reached "conflicting conclusions" (*id.* at 198-199). The court took the position, however, that it did not need to resolve the proper allocation of decisionmaking authority between defendant and his defense attorney under the facts presented because if "fundamental," defendant's choice was repeatedly articulated on the record and the trial judge honored his

wishes; but if "strategic," a reasonable defense attorney could have chosen not to overrule defendant, and acquiescence did not make the representation constitutionally defective (*id.* at 201-202).

Assuming that the shared kitchen was part of defendant's "dwelling," the court next concluded that "the evidence disproving the defense of justification was overwhelming"; and further, "there [was] no significant probability, or even a reasonable possibility, that the verdict would have been different had the 'no duty to retreat' instruction been given[, so] any error in the court's charge was harmless" (*id.* at 205). Finally, the court decided that the verdict was not against the weight of the evidence. A Judge of this Court granted defendant leave to appeal (17 NY3d 793 [2011]).

## II.

This appeal calls upon us to consider how decisionmaking authority is allocated within the attorney-client relationship with respect to submission of lesser-included offenses to the jury. Is this decision fundamental—comparable to how to plead and whether to waive a jury, take the stand or appeal—and therefore reserved to the accused (*see Jones v Barnes*, 463 US 745, 751 [1983]), or is it a matter of strategy and tactics, ultimately for the defense attorney to decide? As one noted commentator put it:

> "Apart from disagreements concerning the entry of an insanity plea, perhaps the most troubling source of contention [between client and attorney in a criminal case] is the decision whether to consent to submitting to the jury counts or charges lower than, or included in, the most serious count of the indictment. Tactically, the choice is whether to 'go for broke,' that is, have the jury vote up or down on the gravest charge, or to provide a possible locus of compromise. Part gamble, part experience, it is difficult to say whether this vital choice belongs among the defendant's reserved prerogatives or has been ceded to the wisdom and caution of counsel" (H. Richard Uviller, *Calling the Shots: The Allocation of Choice between the Accused and Counsel in the Defense of a Criminal Case*, 52 Rutgers L Rev 719, 748 [2000]).

In the second edition of its norms of practice for criminal defense counsel, the American Bar Association (ABA) resolved this issue by advising that it was

"important in a jury trial for the defense lawyer to consult fully with the accused about any lesser included offenses the trial court may be willing to submit to the jury. Indeed, because this decision is so important as well as so similar to the defendant's decision about the charges to which to plead, *the defendant should be the one to decide whether to seek submission to the jury of lesser included offenses. For instance, in a murder prosecution, the defendant, rather than the defense attorney, should determine whether the court should be asked to submit to the jury the lesser included offense of manslaughter*" (ABA Standards for Criminal Justice, The Defense Function, standard 4-5.2, Commentary at 4.68 [2d ed 1980] [emphasis added] [hereafter, 1980 ABA Commentary]).

In the third edition issued in 1993, however, the ABA omitted the last two sentences in this paragraph (*see* ABA Standards for Criminal Justice, Defense Function, standard 4-5.2, Commentary at 202 [3d ed 1993] [hereafter, 1993 ABA Commentary]), seemingly signaling an about-face.

Since issuance of the 1993 ABA Commentary, courts have uniformly decided that whether or not to ask the trial judge to instruct the jury on lesser-included offenses is a matter of strategy and tactics ceded by a defendant to his lawyer (*see e.g. State v Eckert*, 203 Wis 2d 497, 508-509, 553 NW2d 539, 544 [1996] [noting that the "proposition contained within the (1980 ABA Commentary did) not contain any citation to authority" and observing that the decision whether to request lesser-included offenses is "a complicated one involving legal expertise and trial strategy"]; *Mathre v State*, 2000 ND 201, ¶¶ 1, 6, 619 NW2d 627, 628, 630 [2000] [holding that the defendant "was not denied effective assistance of counsel by her attorney's failure to confer with her about whether to submit lesser included offenses for jury consideration" and commenting that ABA standard 4-5.2 "does not list the decision to submit lesser included offenses as one which must be made by the defendant and not her attorney"]; *Simeon v State*, 90 P3d 181, 184 [Alaska Ct App 2004] [rejecting the defendant's argument, based on the 1980 ABA Commentary, that he, rather than his lawyer, should have made the decision whether to seek jury instructions on lesser-included offenses and observing that "the commentary (was) only intended as a guide to interpretation," it was revised in

1993 anyway and the judicial decisions cited by the defendant "appear to be a minority (which) rely on the (1980 ABA Commentary) without addressing or acknowledging the current commentary"]; *Cannon v Mullin*, 383 F3d 1152, 1167 [10th Cir 2004] [rejecting claim of ineffective assistance because "(w)hether to argue a lesser-included offense is a matter to be decided by counsel after consultation with the defendant"]; *Arko v People*, 183 P3d 555, 556, 558 [Colo 2008] [holding that "the decision whether to request jury instructions on lesser offenses is a tactical decision that rests with defense counsel after consultation with the defendant," reasoning that "a defendant retains all of his trial rights" and "also retains the opportunity to advocate for outright acquittal"]; *State v Grier*, 171 Wash 2d 17, 32, 246 P3d 1260, 1268 [2011] [indicating that "the decision to exclude or include lesser included offense instructions is a decision that requires input from both the defendant and her counsel but ultimately rests with defense counsel"]; *see also Van Alstine v State*, 263 Ga 1, 3, 426 SE2d 360, 363 [1993] [declining to follow the 1980 ABA Commentary because the decision whether to pursue lesser-included offenses "is often based on legal complexities only the most sophisticated client could comprehend, not unlike the tactical decisions involved regarding the assertion of technical defenses"]).

Other courts have essentially simply assumed that whether to request lesser-included offenses is a strategic or tactical decision made by defense counsel (*see People v Taylor*, 2 AD3d 1306, 1308 [4th Dept 2003] ["defendant was not denied his right to make a fundamental decision( ) when the court (in a nonjury trial) considered a lesser included offense charge after discussing the issue with defense counsel and the prosecutor, without input from defendant"] [internal quotation marks and citation omitted]; *see also State v Sheppard*, 253 Mont 118, 124, 832 P2d 370, 373 [1992] ["mandatory *sua sponte* jury instruction on lesser offenses is inconsistent with Montana law and . . . public policy . . . allowing trial counsel to conduct the case according to his or her own strategy"]; *Autrey v State*, 700 NE2d 1140, 1141 [Ind 1998] [defense counsel's "tactical decision not to tender a lesser included offense does not constitute ineffective assistance"]; *United States v Mays*, 466 F3d 335, 342 [5th Cir 2006], quoting *United States v Estrada-Fernandez*, 150 F3d 491, 496 [5th Cir 1998] [" 'In deciding whether to request (a lesser-included offense) instruction, defense counsel must make a strategic choice: giving the instruction may decrease the chance

that the jury will convict for the greater offense, but it also may decrease the chance of an outright acquittal' "]).

Importantly, a trial court in New York may "in its discretion" submit a lesser-included offense "if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater" (CPL 300.50 [1]). And where a reasonable view of the evidence supports submission of a lesser-included offense, the court *"must do so"* if "requested by *either party*" (CPL 300.50 [2] [emphases added]). This rule came about

> "to benefit, where appropriate and consistent with the evidence, the defendant with the jury's unspoken mercy dispensing power and to help the prosecution, simultaneously and also where appropriate, conclude a case without the necessity of retrial if an element of a crime is not proved at trial and the jury can have the opportunity to dispense the common sense justifiable and substantial lesser result" (Joseph W. Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 300.50 at 609 [1982 ed]).

Defendant makes the point that, in light of CPL 300.50, the decision whether to ask for a lesser-included charge differs critically "from the decisions that are personal to the defendant" and therefore fundamental as "it makes little sense to hold that the defendant personally has the last say about an issue when *the defense as a whole does not*" (emphasis added) (*cf. People v Davis*, 13 NY3d 17, 30 [2009] [stressing that CPL 350.20 requires the "parties(') agreement," not defendant's personal consent, when holding that "the decision whether to agree to JHO adjudication of a petty criminal case represents the sort of 'tactical decision' best left to the determination of counsel"]). We agree.

The People analogize an instruction on lesser-included offenses to a guilty plea, citing the Illinois Supreme Court's opinion in *People v Brocksmith* (162 Ill 2d 224, 229, 642 NE2d 1230, 1232 [1994] ["Because it is defendant's decision whether to initially plead guilty to a lesser charge, it should also be defendant's decision to submit an instruction on a lesser charge at the conclusion of the evidence"]), which relied on the 1980 ABA Commentary; or the submission to the jury of the affirmative defense of extreme emotional distress (EED), citing *People v*

*Petrovich* (87 NY2d 961, 963 [1996] ["the submission of the (EED) defense to the jury could . . . be determinative of the verdict," which "is not unlike a defendant, who represented by counsel, retains the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify (on one's) own behalf, or take an appeal"] [internal quotation marks omitted]). But unlike the situation with lesser-included offenses, a decision to plead guilty rests *exclusively* with a defendant. Similarly, the EED defense can be given to the jury only upon a defendant's request; the People may not seek and a court may not submit this defense to the jury over a defendant's objection (*see People v Bradley*, 88 NY2d 901, 902 [1996]).

█ Here, the defense attorney asked the trial judge to submit first- and second-degree manslaughter to the jury; he repeatedly voiced his professional judgment that it was in his client's best interests for the jury to be instructed on these lesser-included offenses. The judge, however, made plain that he would be guided solely by defendant's choice in the matter, despite the defense attorney's clearly stated views and advice to the contrary. This was error because the decision was for the attorney, not the accused, to make. By deferring to defendant, the judge denied him the expert judgment of counsel to which the Sixth Amendment entitles him.*

We emphasize that this is not a case where, after consulting with and weighing the accused's views along with other relevant considerations, an attorney decides to forgo submission of lesser-included offenses to the jury. The record shows that the defense attorney never deviated from his position that "going for broke" was tactically unwise; rather, the judge was unwilling to submit lesser-included offenses unless defendant agreed. In short, the defense attorney never "acceded" or "acquiesc[ed]" to defendant's decision (*see* 79 AD3d at 203, 204) except to the extent the judge impermissibly left him no alternative.

█ Next, we cannot say that the error here was harmless beyond a reasonable doubt (*see People v Wardlaw*, 6 NY3d 556 [2006] [holding that under certain circumstances the harmless error rule may be applied where the right to counsel has been violated]). The trial judge concluded that there was a reasonable

---

* The dissent makes the point that defendant might have had an appealable issue whether or not the trial judge submitted the lesser-included offenses to the jury (dissenting op at 36). We agree the judge faced a dilemma, caused by the uncertainty in the law which today's decision dispels.

view of the evidence to support a conviction for manslaughter but not murder; the prosecutor agreed in part, at one point himself requesting submission of first-degree manslaughter to the jury. On this record, the jurors decided that defendant, a man in his very early forties with no prior criminal record, did not intend to inflict physical injury on Jones, and might well have found him guilty of manslaughter rather than murder when he killed Gardner.

In light of our disposition of this appeal, we need not reach and do not express an opinion whether Supreme Court should have instructed the jury on the "no duty to retreat" exception to the justification charge. Accordingly, the order of the Appellate Division should be reversed, and a new trial ordered.

JONES, J. (dissenting). Because I believe the trial court did not commit reversible error in complying with defendant's decision that first- and second-degree manslaughter not be charged as lesser-included offenses of murder, I respectfully dissent. The question raised by this appeal is whether the trial court abrogated defendant's Sixth Amendment right to counsel by not submitting a lesser-included offense charge when defendant who had fully consulted with defense counsel on why the lesser-included offense charge was being sought, and had been repeatedly advised by both the court and defense counsel that such a charge was in his best interest and supported by the law, disregarded the advice and decided he did not want that charge submitted to the jury.

In this case, defense counsel, after the evidence portion of the trial, asked the court to submit first- and second-degree manslaughter to the jury as lesser-included offenses of second-degree murder. Among other things, defense counsel told the court he had explained to defendant, who had asserted the defense of justification, that a lesser-included charge would afford the jury the opportunity to reach a compromise verdict on manslaughter, which would carry much less prison time than murder. Subsequently, defense counsel, on the record, withdrew his request after further discussion with defendant. Defense counsel stated defendant had decided, against his advice, that the manslaughter offenses should not be submitted to the jury because he believed the evidence showed that he acted in self-defense. After discussions on and off the record, the trial court indicated that it would not submit the lesser-included counts to the jury.

Although a criminal defendant who is represented by counsel relegates control of much of the case to the lawyer (*see People v*

*Ferguson*, 67 NY2d 383, 390 [1986]), the overwhelming majority of recent jurisprudence—concerning the consultation and agreement between defense counsel and client on lesser-included offenses—leans toward permitting a defendant to participate in the decision making process (*see* ABA Standards for Criminal Justice, Defense Function, standard 4-5.2, Commentary at 202 [3d ed 1993] [ABA commentators wrote, "(i)t is . . . important in a jury trial for defense counsel to consult fully with the accused about any lesser included offenses the trial court may be willing to submit to the jury"]). Indeed, most controversies have come about because the defendant was not consulted or given an opportunity to express his opinion as to whether or not lesser included charges should be included in the verdict sheet (*see e.g. People v Taylor*, 2 AD3d 1306, 1308 [4th Dept 2003]). That is not what happened in the case presently before us.

Here, defendant was fully consulted by counsel on whether to include the charges of first-degree (intentional) manslaughter and second-degree (reckless) manslaughter as lesser-included counts to be considered by the jury. But defendant ultimately objected to the submission of the lesser-included counts. After defendant consulted with his attorney, the court chose to speak with defendant directly. In that exchange, defendant clearly insisted that he did not want the lesser-included charges placed before the jury. In short, both defense counsel and the court tried, unsuccessfully, to persuade defendant that it would be to his benefit to have these additional charges considered. Moreover, while defense counsel expressed his disagreement with defendant by saying that in his judgment the counts ought to be submitted, he did not specifically object when the lesser-included counts were not submitted. Instead he withdrew his request for the charge, effectively acceding to the wishes of his client.*

The facts of this case not only highlight that defense counsel fully consulted defendant, they also make clear that defendant fully participated in the discussion and decision concerning whether the lesser-included counts charge should be submitted to the jury. This is not a case where defense counsel told defendant what the decision was and defendant silently accepted it, or where defense counsel did not advise defendant of the decision.

---

* Even if the lesser-included offenses of intentional and reckless manslaughter were supported by a reasonable view of the evidence, the trial court's decision not to submit those charges to the jury, in light of the withdrawn request for the lesser-included charge, was not error (*see* CPL 300.50 [2]; *People v Crique*, 63 AD3d 566 [1st Dept 2009]).

Here, defendant was a full participant in the decision, and exercised his right to disagree with counsel and object to a particular course of action. Because a defendant has the most to lose in a criminal proceeding (i.e., freedom), reason dictates that the defendant shall control his/her own destiny and have the ultimate authority regarding choices he/she makes (even if against the advice of counsel). Our decision in *People v Petrovich* (87 NY2d 961 [1996]) illustrates this point.

In *Petrovich*, defendant was accused of murder, and, at trial, he asserted he was suffering from a mental disease or defect at the time of the incident. At the conclusion of the evidence, defense counsel requested a charge of extreme emotional disturbance. However, the next day, counsel withdrew the request at the insistence of defendant, despite his advice to the contrary. The trial court gave defendant and counsel additional time to discuss the matter, but defendant did not change his mind. The trial court did not give the charge, concluding that the defendant's decision was determinative. Defendant was convicted of second-degree murder (two counts). On appeal, defendant argued, similar to defendant in the case at bar, that the trial court deprived him of his Sixth Amendment right to counsel. This Court concluded that the trial court did not abrogate the defendant's Sixth Amendment right to counsel, reasoning that defendant, who, according to the record, (1) perceived that charging both second-degree murder and first-degree manslaughter would afford the jury two opportunities to convict; and (2) "calculated that eliminating consideration of manslaughter increased his chance for an acquittal," could not "complain" on appeal "that his miscalculation translate[d] into a forced relinquishment of the right to counsel" (87 NY2d at 963).

Applying the reasoning set forth in *Petrovich* here, defendant, who objected to the lesser-included offense charge because he believed the evidence showed he acted in self-defense, cannot now complain about his own miscalculation. The defendant's choice to reject a charge of lesser-included offenses does not amount to a forced relinquishment, by the trial court, of the right to counsel.

Moreover, defendant's considered decision—rejecting the submission of lesser-included offenses—is completely consistent and logical in light of his assertion of the justification defense. Certain defenses—e.g., the defenses of alibi, mistaken identification and justification—are unique in that their acceptance by

the jury results in a complete exoneration (i.e., acquittal of the charges). But, the submission of lesser-included offenses in a case where such a defense is asserted dilutes the force and effect of the defense itself. Petit juries, which are not instructed concerning the legal bases (and subtleties) of lesser-included offenses, would understandably find it hard to accept that a defendant acted in self-defense if lesser-included offenses are available because such charges signal that defendant is seeking a compromised verdict. In short, charging the jury on lesser-included offenses where the defense of justification has been asserted invites a jury to disregard justification and focus on the question of the defendant's mental state (here, intent and/or recklessness).

Finally, if the court had rejected the defendant's position and charged the lesser-included offenses over his objection, an acquittal on the top count together with a conviction of a charged lesser-included count may result in reversible error. In this circumstance, defendant would have an appealable issue regardless of whether the lesser-included offenses were submitted to the jury or not.

Accordingly, I would affirm the order of the Appellate Division in this case.

Chief Judge LIPPMAN and Judges CIPARICK and GRAFFEO concur with Judge READ; Judge JONES dissents and votes to affirm in a separate opinion in which Judges SMITH and PIGOTT concur.

Order reversed, etc.