# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**472**

**KA 13-01736**

PRESENT: SMITH, J.P., PERADOTTO, CARNI, SCONIERS, AND VALENTINO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                  MEMORANDUM AND ORDER

MARCUS J. GOTTSCHE, DEFENDANT-APPELLANT.

---

J. MICHAEL MARION, TONAWANDA, FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (MATTHEW B. POWERS OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (Russell P. Buscaglia, A.J.), rendered February 15, 2012. The judgment convicted defendant, upon a jury verdict, of murder in the second degree and criminal possession of marihuana in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him upon a jury verdict of, inter alia, murder in the second degree (Penal Law § 125.25 [1]), defendant contends that defense counsel and Supreme Court treated as determinative his personal opinion with respect to whether to submit lesser-included offenses to the jury and thus that he was denied effective assistance of counsel within the meaning of *People v Colville* (20 NY3d 20). We reject that contention.

The Court of Appeals held in *Colville* (20 NY3d at 23) that "the decision whether to seek a jury charge on lesser-included offenses is a matter of strategy and tactics which ultimately rests with defense counsel." The defendant in *Colville*, like the defendant herein, was charged with murder in the second degree (*id.* at 23). The defendant's attorney asked the court to submit the lesser-included offenses of first- and second-degree manslaughter to the jury, and the court agreed (*id.*). The defendant, however, later decided that he did not want the jury to consider any lesser-included offenses (*id.* at 25). Defense counsel "repeatedly voiced his professional judgment that it was in the client's best interests for the jury to be instructed on the[ ] lesser-included offenses" and, "*despite the defense attorney's clearly stated views and advice to the contrary*," the judge "made plain that he would be guided solely by defendant's choice in the matter" (*id.* at 32 [emphasis added]). The Court concluded that the trial court erred because the decision with respect to lesser-included offenses "was for the attorney, not the accused, to make" (*id.*).

According to the Court, "[b]y deferring to defendant, the judge denied him the expert judgment of counsel to which the Sixth Amendment entitles him" (*id.*).

Here, unlike in *Colville*, there is nothing in the record to establish that the decision to forgo the submission of lesser-included offenses was made solely in deference to defendant, that it was against the advice of defendant's counsel, or that it was inconsistent with defense counsel's trial strategy. After the People rested, the court asked defense counsel whether he intended to request any lesser-included offenses. Defense counsel indicated that he did, but that he "just need[ed] to confirm that with my client." During the charge conference, defense counsel informed the court that, after discussing the issue with defendant over the last several weeks, counsel "made [his] suggestions to [defendant] and [it was counsel's] understanding that we are not asking for the lesser charge of manslaughter in the second degree." Defense counsel indicated that there was nothing else he wished to say with respect to the lesser-included offense issue. After the court denied defense counsel's request for a justification charge, the court again raised the issue of lesser-included offenses, noting that defendant's decision had been made without the benefit of the court's ruling on justification. Defense counsel advised the court that defendant "still does not want me to ask for any lesser included offenses. I did speak to him after the Court made its ruling last week Friday about it to see if it would change his mind. I spoke to him again this morning for a few moments and it's still my understanding that he does not wish that I ask for any lesser included offenses." Again, defense counsel declined to make any further comment on the issue.

While it is clear from the record that defendant was opposed to the submission of lesser-included offenses to the jury, there is no indication in the record that defense counsel's position differed from that of his client. Rather, the record is equally consistent with the inference that, after discussing the issue at length, defense counsel agreed with or acceded to defendant's position (*cf. People v Alvarez*, 106 AD3d 568, *lv denied* 21 NY3d 1013). This case is therefore distinguishable from *Colville*, in which "[t]he record show[ed] that the defense attorney never deviated from his position that 'going for broke' was tactically unwise . . . In short, the defense attorney never '*acceded*' *or* '*acquiesc[ed]*' *to defendant's decision* . . . except to the extent the judge impermissibly left him no alternative" (20 NY3d at 32 [emphasis added]). Here, by contrast, the record supports the conclusion that, "after consulting with and weighing the accused's views along with other relevant considerations, [defense counsel] decide[d] to forgo submission of lesser-included offenses to the jury" (*id.*). We thus conclude that, on the record before us, it cannot be said that defendant was "denied . . . the expert judgment of counsel to which the Sixth Amendment entitles him" (*id.*).

Contrary to the further contention of defendant, we conclude that the evidence is legally sufficient to establish his intent to kill, and that the verdict is not against the weight of the evidence with respect to that element of the crime. It is well established that

"[i]ntent to kill may be inferred from defendant's conduct as well as the circumstances surrounding the crime" (*People v Price*, 35 AD3d 1230, 1231, *lv denied* 8 NY3d 926; *see People v Lopez*, 96 AD3d 1621, 1622, *lv denied* 19 NY3d 998; *People v Badger*, 90 AD3d 1531, 1532, *lv denied* 18 NY3d 991).  Viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621), we conclude that the evidence is legally sufficient to establish that defendant intended to kill the victim (*see People v Thomas*, 96 AD3d 1670, 1674; *People v Lucas*, 94 AD3d 1441, 1441, *lv denied* 19 NY3d 964).  The People presented evidence that, shortly before the shooting, defendant and the victim were involved in a heated argument and physical altercation, which escalated into a standoff with knives (*see Lucas*, 94 AD3d at 1441; *People v Evans*, 242 AD2d 948, 949, *lv denied* 91 NY2d 834; *see also Lopez*, 96 AD3d at 1622).  Defendant then went upstairs and grabbed a loaded .22-caliber semi-automatic rifle from the side of his bed.  The record reflects that defendant had four firearms in his house.  In addition to the rifle at issue, defendant had a .308 caliber French military rifle, which was not readily operable, and two BB guns, one of which was in the kitchen where the altercation occurred.  Defendant, however, chose the most lethal option available to him, i.e., the loaded .22-caliber rifle from his bedroom.  With respect to the shooting itself, a witness testified that, after firing a single shot into the ground from the staircase, defendant turned and fired a second shot "towards the front door," out of which the victim was fleeing.  Indeed, in his statement to the police, defendant stated that he remembered "shooting once at [the victim] as she went out the door."  We therefore conclude that "there is [a] valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial," i.e., that defendant intended to kill the victim (*People v Bleakley*, 69 NY2d 490, 495; *see Lucas*, 94 AD3d at 1441; *Evans*, 242 AD2d at 949).

We further conclude that, although a different verdict would not have been unreasonable, the verdict is not against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).  It is well established that " '[r]esolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the jury' " (*Lopez*, 96 AD3d at 1622), and we cannot conclude that the jury failed to give the evidence the weight it should be accorded (*see People v Johnson*, 38 AD3d 1327, 1328, *lv denied* 9 NY3d 866; *People v Phong T. Le*, 277 AD2d 1036, 1036, *lv denied* 96 NY2d 762).

Defendant further contends that he was denied a fair trial by prosecutorial misconduct on summation.  We note that defendant failed to object to most of the alleged instances of misconduct, and thus his challenges to those remarks are unpreserved for our review (*see* CPL 470.05 [2]; *People v Smith*, 32 AD3d 1291, 1292, *lv denied* 8 NY3d 849).  In any event, we conclude that the majority of the prosecutor's comments "were either a fair response to defense counsel's summation or fair comment on the evidence" (*People v Goupil*, 104 AD3d 1215, 1216, *lv denied* 21 NY3d 943 [internal quotation marks omitted]; *see*

*People v Wilson*, 104 AD3d 1231, 1233, *lv denied* 21 NY3d 1011, *reconsideration denied* 21 NY3d 1078).  While the prosecutor's repeated comments to the effect that defendant "aimed" the rifle at the fleeing victim may have been an overstatement of the facts, we nonetheless conclude that those comments "remained within the broad bounds of rhetorical comment permissible during summations" (*People v Wellborn*, 82 AD3d 1657, 1658, *lv denied* 17 NY3d 803 [internal quotation marks omitted]).  We further conclude that any improper remarks were "not so pervasive or egregious as to deprive defendant of a fair trial" (*People v Johnson*, 303 AD2d 967, 968, *lv denied* 100 NY2d 583 [internal quotation marks omitted]; *see People v Willis*, 79 AD3d 1739, 1741, *lv denied* 16 NY3d 864), and thus that defense counsel's failure to object to the allegedly improper comments did not constitute ineffective assistance of counsel (*see People v Koonce*, 111 AD3d 1277, 1278-1279).

Finally, we conclude that the sentence is not unduly harsh or severe under the circumstances of this case.

Entered:  June 13, 2014                          Frances E. Cafarell
                                                 Clerk of the Court