People v Diaz (2018 NY Slip Op 04389)





People v Diaz


2018 NY Slip Op 04389


Decided on June 14, 2018


Appellate Division, Third Department


Clark, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 14, 2018

107635

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JUAN DIAZ, Appellant.

Calendar Date: April 25, 2018

Before: Garry, P.J., Lynch, Clark, Aarons and Rumsey, JJ.


Bruce Evans Knoll, Albany, for appellant.
Karen A. Heggen, District Attorney, Ballston Spa (Hannah E.C. Moore, New York Prosecutors Training Institute, Inc., Albany, of counsel), for respondent.


Clark, J.

Appeal from a judgment of the County Court of Washington County (McKeighan, J.), rendered June 4, 2014, upon a verdict convicting defendant of the crimes of assault in the second degree (two counts), criminal possession of a weapon in the third degree and promoting prison contraband in the first degree (two counts).
In June 2013, defendant and several other inmates at the Great Meadow Correctional Facility were being escorted to breakfast when defendant broke from the line and stabbed a correction officer twice with a makeshift weapon. The weapon was ultimately secured during the ensuing struggle between defendant and responding correction officers and, as the officers attempted
to restrain defendant, a second weapon was found on him. Defendant was subsequently indicted for attempted murder in the second degree, two counts of assault in the second degree, criminal possession of a weapon in the third degree and two counts of promoting prison contraband in the first degree. Following a jury trial, defendant was acquitted of the charge of attempted murder in the second degree, but found guilty of the remaining charges. County Court sentenced defendant to an aggregate prison term of 25 years to life. Defendant now appeals, and we affirm.
Defendant argues that the evidence was legally insufficient to establish the element of physical injury required for both of his assault convictions (see Penal Law § 120.05 [2], [7]). Under the Penal Law, physical injury is defined as an "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). Whether the statutory substantial pain threshold has been satisfied is generally a question for the trier of fact; however, there is an objective level [*2]below which the question becomes one of law (see Matter of Philip A., 49 NY2d 198, 200 [1980]; People v Rivera, 42 AD3d 587, 588 [2007], lv denied 9 NY3d 880 [2007]; People v Colantonio, 277 AD2d 498, 499-500 [2000], lv denied 96 NY2d 781 [2001]). To qualify as substantial pain within the meaning of the Penal Law, the pain must be "more than slight or trivial," but it "need not . . . be severe or intense" (People v Chiddick, 8 NY3d 445, 447 [2007]; accord People v Hicks, 128 AD3d 1221, 1222 [2015], lv denied 26 NY3d 930 [2015]; see People v Johnson, 150 AD3d 1390, 1392 [2017], lv denied 29 NY3d 1128 [2017]). Several factors are relevant to determining whether "enough pain was shown to support a finding of substantiality," including an objective assessment of the injury sustained, the victim's subjective description of the injury and whether the victim sought any medical treatment to address the injury (People v Chiddick, 8 NY3d at 447; see People v Hicks, 128 AD3d at 1222; People v Nisselbeck, 85 AD3d 1206, 1207-1208 [2011]).
The evidence at trial established that defendant stabbed the unsuspecting victim in the left temple and left abdomen with an "ice pick type weapon" measuring roughly seven inches in length, thereby causing the victim to sustain puncture wounds in both areas, bleed "profusely" and require immediate medical treatment at the prison infirmary, and thereafter at a local hospital. The victim testified that he was "sore," "upset" and "visibly shaken" on the day of the attack and that he began to develop worsening symptoms in the days and weeks that followed. Specifically, the victim testified that the left side of his head was swollen, bruised and sore to the touch and that he was therefore unable to sleep on his left side. The victim also stated that he experienced occasional, debilitating headaches for roughly 1½ weeks after the incident. The victim also complained of neck pain that prompted him to seek treatment with a chiropractor and to report on his first visit that his pain measured at an 8 on a scale of 1 to 10. Testimony from the chiropractor, as well as relevant medical records, demonstrated that the victim had a strain injury to his cervical spine that restricted the range of motion in his neck and required 18 treatment visits over a period of three months. The victim further testified that after the attack, he had repeated nightmares that caused him to wake up struggling in his sleep and that he sought treatment from a primary care physician, who prescribed him antianxiety medication. Viewing this evidence in the light most favorable to the People and affording them the benefit of every favorable inference (see People v Danielson, 9 NY3d 342, 349 [2007]), we are satisfied that there is a valid line of reasoning and permissible inferences from which a rational person could conclude that defendant caused the victim physical injury, as defined in Penal Law § 10.00 (9) (see People v Fields, 160 AD3d 1116, 1117-1118 [2018]; People v Hicks, 128 AD3d at 1222; People v Douglas, 85 AD3d 1585, 1586 [2011]; People v Porter, 305 AD2d 933, 934 [2003], lv denied 100 NY2d 586 [2003]). The jury's determination to credit the foregoing proof, in spite of defendant's challenges thereto, was not against the weight of the evidence (see People v Fields, 160 AD3d at 1118; People v Boyd, 97 AD3d 898, 899 [2012], lv denied 20 NY3d 1009 [2013]).
Defendant's next two challenges relate to the division of final decision-making authority between a represented defendant and his or her attorney. With respect to his defense as a whole, defendant contends that County Court impermissibly allowed defense counsel to overrule defendant's preference to pursue a psychiatric defense at trial — a decision that he claims is fundamental and ultimately belongs to him. Secondly, defendant argues that, in violation of his Sixth Amendment right to the expert judgment of counsel, defense counsel abdicated strategic decision-making authority to defendant by acceding to his decision to forgo a mistrial following certain prejudicial testimony. We disagree with defendant on both points.
"A defendant having accepted the assistance of counsel, retains authority only over certain fundamental decisions regarding the case," including "whether to plead guilty, waive a jury trial, testify in his or her own behalf or take an appeal" (People v White, 73 NY2d 468, 478 [*3][1989], cert denied 493 US 859 [1989]; see Jones v Barnes, 463 US 745, 751 [1983]; People v Petrovich, 87 NY2d 961, 963 [1996]). "With respect to strategic and tactical decisions concerning the conduct of trials, by contrast, defendants are deemed to repose decision-making authority in their lawyers . . . and defendants do not retain a personal veto power over counsel's exercise of professional judgments" (People v Colon, 90 NY2d 824, 826 [1997]; see People v Ferguson, 67 NY2d 383, 390 [1986]; People v Parker, 290 AD2d 650, 651 [2002], lv denied 98 NY2d 679 [2002]). "If defense counsel solely defers to a defendant, without exercising his or her professional judgment, on a decision that is 'for the attorney, not the accused, to make' because it is not fundamental, the defendant is deprived of 'the expert judgment of counsel to which the Sixth Amendment entitles him' or her" (People v Hogan, 26 NY3d 779, 786 [2016], quoting People v Colville, 20 NY3d 20, 32 [2012]).
We first address defendant's contention that defense counsel was required to present, in accordance with defendant's preference, a psychiatric defense premised upon the theory that he suffered from Secure Housing Unit Syndrome — also known as Grassian Syndrome — caused by the "considerable" amount of time that he spent in solitary confinement while incarcerated. The record reflects that, prior to trial, defense counsel timely served and filed a written notice of intention to present psychiatric evidence relating to Grassian Syndrome (see CPL 250.10 [2]). In furtherance of that intention, defense counsel successfully sought a subpoena duces tecum requiring the Department of Corrections and Community Supervision to produce certified records relating to defendant's placement in a special housing unit. However, sometime thereafter, defense counsel decided to abandon his intention to present psychiatric evidence to the jury. As evidenced by a letter that defendant wrote to County Court eight days prior to trial, defendant disagreed with defense counsel's decision in this regard and expressly took issue with the fact that he had not been examined by a psychiatrist. County Court forwarded the letter to all counsel and addressed the matter prior to jury selection on the first day of trial. During this discussion, the People stated that, were defendant to argue that his violence was the product of Grassian Syndrome, then they would counter that defense by attempting to present proof of "every violent act . . . defendant actually ever committed." The People posited that defense counsel likely anticipated this counter argument. County Court inquired whether defense counsel considered this trial strategy, and defense counsel indicated that he fully explored the strategy and did not believe that it fit within the theory of the case. The court then began jury selection, without further discussion of defendant's stated preference to mount a psychiatric defense.
Contrary to defendant's assertion, the decision of whether to present psychiatric evidence in furtherance of the affirmative defense of not criminally responsible by reason of mental disease or defect is a strategic decision involving the exercise of professional judgment, over which defense counsel retains ultimate decision-making authority (see People v Rizzo, 301 AD2d 682, 683 [2003], lv denied 99 NY2d 631 [2003]; see generally People v Clark, 28 NY3d 556, 563-564 [2016]; cf. People v Zada, 98 AD2d 733, 733 [1983]). Additionally, the record reflects that defense counsel "fully" investigated a possible psychiatric defense and, having done so, "made 'a calculated trial strategy' to fashion a different defense" (People v Rizzo, 301 AD2d at 683, quoting People v Copp, 184 AD2d 859, 861 [1992], lv denied 80 NY2d 974 [1992]; see generally People v Oliveras, 21 NY3d 339, 346 [2013]). Significantly, defense counsel vigorously pursued an alternate defense, which resulted in defendant's acquittal on the top count of the indictment — attempted murder in the second degree. Moreover, defense counsel's decision to abandon the affirmative defense was reasonable, given his knowledge of defendant's violent criminal history and the evidence against him, including defendant's statements to police investigators and a letter that he wrote in advance of the attack. The affirmative defense was also inconsistent with defendant's trial testimony that he had been formulating a plan to kill a correction officer, in the hopes that he would be killed in retaliation, for "several years" (see [*4]People v Rizzo, 301 AD3d at 683). Finally, we cannot agree with defendant that the strategy chosen by defense counsel, in an exercise of professional judgment, rendered counsel's representation constitutionally deficient (see People v Clark, 28 NY3d at 564).
We now turn to defendant's contention that defense counsel improperly relinquished to defendant the decision of whether to seek a mistrial. It is well-settled that the decision of whether to seek a mistrial is "one for the lawyer," as it "requires an evaluation of the case, analysis of the evidence, recognition of potential harm to defendant's case from any errors or inappropriate remarks which may have occurred, and consideration of whether a more favorable jury is likely at a retrial and whether delay is likely to help or harm the defendant's case" (People v Ferguson, 67 NY2d at 390; see People v Hogan, 26 NY3d at 786). At trial, County Court sustained defense counsel's objection to testimony — given in violation of the court's Molineux ruling — that defendant stated during a police interview that "he had been arrested for a murder." Thereafter, outside the presence of the jury, defense counsel moved for a mistrial, and County Court took a short break so that the People "could consider options" and defense counsel could consult with defendant. When the proceedings resumed on the record, County Court indicated that it was "inclined to grant [the] request" for a mistrial. However, defense counsel stated: "Judge, I conferred with [defendant] about this extensively. He is satisfied with the way his trial is proceeding. Although I do think the comment was prejudicial, he wants to proceed with this trial. So, granting him great deference, as this is his trial, I will withdraw the motion for a mistrial." Defense counsel then requested the issuance of a "strong curative instruction." After County Court confirmed with defendant that he did indeed wish to proceed with the trial, the jury was brought back in and the court instructed it to disregard the testimony that defendant had been arrested for a crime.
Defense counsel's statements on the record do not demonstrate, as defendant argues, that he ceded his decision-making authority to defendant. Rather, the record reflects that defense counsel consulted with defendant and received his input on the matter before withdrawing his motion for a mistrial (see People v Pickett, 153 AD3d 940, 940 [2017], lv denied 30 NY3d 1022 [2017]; People v Richardson, 143 AD3d 1252, 1254-1255 [2016], lv denied 28 NY3d 1150 [2017]; People v Butler, 140 AD3d 472, 472 [2016], lv denied 28 NY3d 1026 [2016]). Although defense counsel maintained that the comment was prejudicial, and indeed it was (see People v Molineux, 168 NY 264, 293 [1901]; People v Torres, 215 AD2d 702, 702 [1995], lv denied 86 NY2d 847 [1995]), this was not a case where counsel openly opposed his client's wishes and stated on the record that defendant was proceeding against his advice and professional judgment (compare People v Colville, 20 NY3d at 32). Accordingly, under these circumstances, we do not find that defendant was deprived of his Sixth Amendment right to the expert judgment of counsel (see People v Richardson, 143 AD3d at 1255; compare People v Colville, 20 NY3d at 32). Having reviewed defendant's remaining criticisms of defense counsel and counsel's representation in totality, we are satisfied that defendant received meaningful representation (see People v Baldi, 54 NY2d 137, 147 [1981]).
We further discern no error in County Court's determination to require that defendant be handcuffed throughout the trial [FN1]. It is well-settled that, as a matter of federal and state [*5]constitutional law, "a defendant may not be physically restrained before the jury unless there is a reasonable basis, articulated on the record, for doing so" (People v Rouse, 79 NY2d 934, 935 [1992]; see People v Best, 19 NY3d 739, 743 [2012]; People v Clyde, 18 NY3d 145, 152 [2011], cert denied 566 US 944 [2012]). Here, County Court stated on the record that defendant had a "clear record of violence both within and outside the prison" and that it was therefore not "comfortable" with the security risks posed by allowing defendant to sit throughout the trial without restraints. Considering defendant's violent criminal history, as well as the fact that the present charges arose out of allegations that defendant attacked the victim in the hopes that he would incite retaliatory actions from correction officers that would result in his death, we find that County Court's stated security concerns provided a reasonable basis to require that defendant be restrained during the trial (see People v Brunson, 68 AD3d 1551, 1557 [2009], lv denied 15 NY3d 748 [2010]; People v Robinson, 64 AD3d 803, 803-804 [2009]; People v Brown, 176 AD2d 408, 408 [1991], lv denied 79 NY2d 853 [1992]). Nor do we find that defendant was deprived of a fair trial by County Court's determination to allow, as a security measure, two correction officers to sit near defendant throughout the trial and other law enforcement personnel to sit in the court's gallery (see People v Gamble, 18 NY3d 386, 397 [2012]; People v Pressley, 156 AD3d 1384, 1385 [2017], mod 159 AD3d 1619 [2018]; People v Moye, 154 AD3d 546, 546 [2017], lv denied 30 NY3d 1062 [2017]). Moreover, any prejudice resulting from these security measures was minimized by County Court's instruction to the jury — given at defendant's request — that it should not draw any inference from the fact that defendant was presently in custody (see People v Rouse, 79 NY2d at 935; People v Allaway, 13 AD3d 715, 716 [2004]; People v Brown, 176 AD2d at 408).
As a final matter, we are unpersuaded by defendant's assertion that the cumulative effect of various alleged errors — some of which we have rejected above — deprived him of a fair trial. To the extent that we have not expressly discussed any of defendant's remaining arguments, such arguments have been reviewed and found to be lacking in merit.
Garry, P.J., Lynch, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defense counsel did not request removal of defendant's ankle shackles, given that they would be concealed from the jury by a "border" during trial. Additionally, we note that the jurors did not observe defendant's ankle shackles when he testified on his own behalf, as he was moved to and from the witness stand outside of their presence.