[605 NYS2d 542]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CHRISTOPHER S. PETERSON, Appellant.

Third Department, December 23, 1993

APPEARANCES OF COUNSEL

*Edward M. Robinson,* Binghamton, for appellant.

*Gerald F. Mollen, District Attorney* of Broome County, Binghamton *(Mary Anne Lehmann* of counsel), for respondent.

OPINION OF THE COURT

CARDONA, J.

Defendant was indicted for and convicted of two counts of criminal sale of a controlled substance in the third degree. He was sentenced as a second felony offender on each count to an indeterminate term of imprisonment of 6 to 12 years, the sentences to run consecutively. On this appeal, defendant contends, *inter alia,* that the verdict is against the weight of the evidence *(see,* CPL 470.20 [5]; *People v Bleakley,* 69 NY2d 490). We disagree. The evidence at trial, viewed in a light most favorable to the People *(see, People v Contes,* 60 NY2d 620; *People v Dobbs,* 194 AD2d 996; *People v [Cedric] Williams,* 195 AD2d 492; *People v Harvey,* 175 AD2d 138, *lv denied* 78 NY2d 1076), established the following facts. On November 19, 1991, State Police Investigator Nelson Torres was working undercover at Dell's Bar in the City of Binghamton, Broome County. He asked defendant for a "quarter" and defendant asked if he was a "cop". Defendant then spoke to a white female who was later identified as Tonia Fletcher. Fletcher had known defendant for 18 months at the time. Defendant gave Fletcher a vial of cocaine and thereafter told Torres to go over to Fletcher. Fletcher gave Torres a vial of cocaine in exchange for $20. State Police Investigator Michael Williams was in Dell's Bar at the time and witnessed the transaction between defendant, Torres and Fletcher. Upon exiting the bar, Torres gave a description of defendant and Fletcher over his body wire to the surveillance team. Binghamton Police Investigator Gerald Kushner, an undercover member of the surveillance team, subsequently entered Dell's Bar and identified defendant and Fletcher as

the persons involved in the drug transaction from the descriptions provided. Defendant was not arrested at that time.

On December 11, 1991, while standing on the street just outside of Dell's Bar, Williams, acting undercover, recognized defendant "as the subject from November" and asked him if he had a "quarter". The two men stepped just inside the doorway and Williams purchased cocaine from defendant. Meanwhile, Kushner, who was a member of the surveillance team, drove past Dell's Bar several times and observed Williams and a black male standing in front of the bar. Upon completion of the transaction, Williams gave a description of defendant over his body wire to the surveillance team. Upon hearing the description, Kushner drove past again and identified defendant. Defendant was not arrested at that time.*

■ We reject defendant's claim that there was inadequate evidence to establish that the crime occurred within the geographical jurisdiction of Broome County (see, CPL 20.40). Geographical jurisdiction is a question of fact (see, People v Moore, 46 NY2d 1, 6-7) and, based upon the testimony that the sales occurred at Dell's Bar in Binghamton, the jury could reasonably have concluded that the crime occurred in Broome County without that fact being explicitly stated (see, People v Groom, 188 AD2d 674, 675; see also, Matter of Steingut v Gold, 42 NY2d 311, 316).

■ Defendant contends that it was error to permit the in-court identification testimony of the undercover officers because the People failed to serve a notice pursuant to CPL 710.30 (1). The People counter that no such notice was required because none of the witnesses made a previous identification of defendant through one of the various identification procedures, e.g., lineups, showups or photo arrays typically utilized by police in a criminal investigation.

We agree that County Court was correct in its determination that none of the observations of defendant by Torres, Williams or Kushner on November 19, 1991 or December 11, 1991 constituted an "identification procedure" within the intendment of CPL 710.30 (1) (b). CPL 710.30 (1) (b) requires notice of "testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such".

---

* According to the presentence report, defendant was arrested on January 2, 1992.

Fundamentally, the statute contemplates (and is literally meaningless in the absence of) two distinct pretrial "viewings" of a defendant by an eyewitness. First is the witness's actual *observation* of a defendant either at the time or place of commission of the crime or some other occasion relevant to the case. This is the observation, relevant to and probative of a defendant's guilt or innocence, which forms the basis for the witness's prospective trial testimony. Second, there is a separate, police-initiated, *identification* procedure, such as a lineup, showup or photographic array, which takes place subsequent to the observation forming the basis for the witness's trial testimony and prior to the trial *(see, People v Jenkins,* 176 AD2d 143, *lv denied* 78 NY2d 1128; *People v Hooker,* 114 AD2d 514, *lv denied* 67 NY2d 885; *Matter of Leo T.,* 87 AD2d 297, 299). Stated in the simplest terms, this is the occasion where the witness points at a defendant and says, "That's the one" *(see, Matter of Leo T., supra).* In clear contrast to the prior observation, this "viewing" is not itself probative of defendant's guilt or innocence but is intended merely to "establish[ ] the identity of the criminal actor" *(People v Gissendanner,* 48 NY2d 543, 552).

The fundamental purpose of CPL 710.30 (1) (b) is to permit a defendant an opportunity to raise the issue of whether the identification procedure was unduly suggestive and, if so, whether it is likely to affect the witness's ability to make an accurate in-court identification of the defendant as the person initially observed *(see, ibid.).* A failure to appreciate this fundamental purpose, and, particularly, the distinction between an observation and an identification procedure, may result in the erroneous invocation of CPL 710.30 (1) (b) any time a witness sees a defendant on more than one occasion prior to trial *(see, e.g., People v Wharton,* 74 NY2d 921; *People v Gissendanner, supra; People v Jenkins, supra; People v Trottie,* 167 AD2d 438, *lv denied* 77 NY2d 844; *Matter of Leo T., supra).*

On the occasion of the November 19, 1991 drug sale, Torres and Williams were eyewitnesses to the actual criminal transaction. Although Kushner was not then present and did not observe the sale, he was given a description of defendant and observed him shortly thereafter. Clearly, all three made an "observation" of defendant within the purview of CPL 710.30 (1) (b). No "identification" was or could have been made on this occasion because none of the investigators had made a *prior* "observation" of defendant. On December 11, 1991,

Williams was an eyewitness to a second drug sale by defendant and Kushner again observed defendant at the scene. This viewing constituted not an "identification procedure" with respect to the November 19, 1991 crime but, rather, an "observation" regarding a second, wholly independent crime. The fact that both of Kushner's observations were police arranged is irrelevant because neither of them constituted "identifications". Therefore, the notice requirements of CPL 710.30 were not applicable.

■ Based upon the evidence adduced on these charges and deferring to the jury's resolution of the witnesses' credibility *(see, People v Davis,* 193 AD2d 885), we find that a rational juror could conclude that both the identity of defendant and his sale of the controlled substance were established beyond a reasonable doubt *(see, People v Bleakley,* 69 NY2d 490, 495, *supra; People v Williams,* 172 AD2d 448, 448-449, *affd on mem below* 79 NY2d 803; *see also, People v Santiago,* 176 AD2d 521, *lv denied* 79 NY2d 832). Contrary to defendant's claim, we are satisfied that the verdict is not against the weight of the evidence *(see,* CPL 470.15 [5]; *People v Stokes,* 188 AD2d 627, 628, *lv denied* 81 NY2d 795).

■ We agree with defendant that County Court committed error when it permitted the People to cross-examine defendant's witness regarding her arrest for possession of cocaine *(see, People v Cook,* 37 NY2d 591, 596). That error, however, was harmless when viewed in light of the other evidence of defendant's guilt *(see, People v Crimmins,* 36 NY2d 230).

■ We find defendant's argument, that the People should not have been permitted to call Senior Assistant District Attorney Carol Cocchiola as a rebuttal witness, to be lacking in merit. Because the defense of alibi was not a collateral matter, this form of impeachment was proper *(see, People v Patterson,* 194 AD2d 570).

■ We reject defendant's claim that his sentence, 6 to 12 years in prison on each count to be served consecutively, was harsh and excessive. Defendant's sentence as a second felony offender was within the applicable statutory parameters *(see,* Penal Law § 70.06 [3] [b]; [4] [b]; *People v Gaddy,* 94 AD2d 892, 893). Given defendant's prior criminal history and the nature of the crimes herein, it cannot be said that the sentence was harsh or excessive *(see, People v Szczepanski,* 172 AD2d 884, *lv*

*denied* 78 NY2d 957) and we discern no reason to disturb it *(see, People v Allen,* 191 AD2d 752, *lv denied* 81 NY2d 1010).

MIKOLL, J. P., YESAWICH JR., MERCURE and CREW III, JJ., concur.

Ordered that the judgment is affirmed.