Garry, J.
Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered July 31, 2013, upon a verdict convicting defendant of the crimes of conspiracy in the second degree, criminal sale of a controlled substance in the first degree (four counts), criminal sale of a controlled substance in the second degree (three counts), criminal sale of a controlled substance in the third degree (two counts), attempted criminal possession of a controlled substance in the first degree (two counts), attempted criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and operating as a major trafficker.
Following an investigation by the Attorney General’s Organized Crime Task Force, defendant was arrested in connection with an alleged conspiracy to possess and sell cocaine and heroin in Albany County, various other counties in New York, and Vermont, and charged with multiple crimes related to the criminal sale and possession of controlled substances. Following a joint jury trial,[1] defendant was convicted of conspiracy in the second degree, criminal sale of a controlled substance in the first degree (four counts), criminal sale of a controlled substance in the second degree (three counts), criminal sale of a controlled substance in the third degree (two counts), attempted criminal possession of a controlled substance *1408 in the first degree (two counts), attempted criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and operating as a major trafficker. He was thereafter sentenced as a persistent felony offender and a violent predicate offender to an aggregate prison term of 165 years to life. Defendant appeals.
Initially, we find no merit in defendant’s contention that County Court should have granted his motion to suppress evidence resulting from a search of his storage unit. A court’s determination that probable cause exists for the issuance of a search warrant “must be afforded great deference” (People v Ferguson, 136 AD3d 1070, 1072 [2016] [internal quotation marks and citations omitted]; see People v Mitchell, 57 AD3d 1232, 1233 [2008], lv denied 12 NY3d 760 [2009]), and “[m]inor discrepancies or misstatements do not amount to egregious inaccuracies affecting a probable cause determination” (People v Myers, 241 AD2d 705, 707 [1997], lv denied 91 NY2d 877 [1997]). Here, an affidavit supporting the search warrant application incorrectly identified the specific vehicle upon which a GPS device had been placed for the purpose of tracking defendant’s visits to the storage unit. However, the investigator who completed the affidavit testified that this was an unintentional error, and stated that another vehicle, also belonging to defendant, was in fact monitored by the investigators. County Court credited this testimony and found that the evidence, taken as a whole, clearly indicated that the correct vehicle was monitored and that the application was otherwise supported by probable cause. Thus, defendant did not meet his burden to establish that the warrant application was based upon statements that “were knowingly false or made in reckless disregard of the truth” (People v Williams, 138 AD3d 1233, 1237 [2016] [internal quotation marks and citations omitted], lv denied 28 NY3d 939 [2016]; see People v Myers, 241 AD2d at 707).
Next, we reject defendant’s contention that his suppression motion should have been granted as to eavesdropping warrants pertaining to certain coconspirators. Defendant preserved the issue of his standing to challenge the warrants by raising it in his omnibus motion and, contrary to County Court’s determination, we find that he had standing to raise this issue. The challenged eavesdropping warrants permitted the interception of communications on phones used by several of defendant’s alleged coconspirators. The People subsequently submitted a new application for a warrant to intercept defendant’s cell phone communications that was supported, in part, by *1409 transcripts of intercepted conversations between one of the conspirators and defendant that allegedly revealed that defendant was supplying drugs to the conspirators. As a party to these conversations, with reason to believe that they would be offered against him, defendant had standing to challenge the warrants (see CPL 710.20 [2]; People v Fonville, 247 AD2d 115, 118 n [1998]; People v Truver, 244 AD2d 990, 990-991 [1997]).
County Court did not, however, err in denying defendant’s motion on this ground, as the warrant applications established that there was probable cause for their issuance and that traditional investigative procedures were unlikely to succeed (see CPL 700.15 [2], [4]; 700.20 [2]; People v Alnutt, 107 AD3d 1139, 1141 [2013], lv denied 22 NY3d 1136 [2014]; People v Ross, 97 AD3d 843, 844-845 [2012], lv denied 20 NY3d 935 [2012]). It was not necessary to establish “that every conceivable method of investigation has been tried and failed,” and the applications successfully demonstrated “the nature and progress of the investigation and the difficulties inherent in the use of normal law enforcement methods” (People v Brown, 233 AD2d 764, 765 [1996] [internal quotation marks, ellipsis and citations omitted], lv denied 89 NY2d 1009 [1997]; see People v Rodriguez, 274 AD2d 826, 828 [2000], lv denied 95 NY2d 938 [2000]). The record provides no support for defendant’s contention that the applications were based on knowing or reckless false averments by police (see People v Griffin, 234 AD2d 718, 720 [1996], lv denied 89 NY2d 1036 [1997]).
As for defendant’s contention that the sealing requirements of CPL 700.50 (2) and 700.65 (3) were not complied with in that several of the sealing orders were not signed by the justice who issued the warrants, the sealing requirements are strictly construed and the People are required to offer a satisfactory explanation for any delay that may take place in sealing the evidence (see People v Winograd, 68 NY2d 383, 394-395 [1986]; People v Mullen, 152 AD2d 260, 267 [1989]). In a county where other justices are available, if the People are unable to locate the issuing justice, they are required to find another justice to issue the sealed order (see People v Winograd, 68 NY2d at 394-395; People v Gallina, 66 NY2d 52, 59-60 [1985]; People v Fonville, 247 AD2d at 127). Here, investigators complied with this requirement and avoided undue delay by locating another justice to timely seal the evidence on three occasions when the issuing justice was unavailable.
Next, defendant challenges County Court’s denial of his motion to suppress identification testimony by several investigators on the ground that the People failed to serve the notice *1410 required by CPL 710.30. Before trial, the People advised defendant of their intention to present identification testimony and indicated that statutory notice was not required because the identifications were confirmatory. Defendant moved for an order precluding this evidence, and County Court conducted a hearing pursuant to People v Rodriguez (79 NY2d 445 [1992]). The hearing testimony revealed that, in the course of earlier surveillance of another individual, investigators saw the individual meet with defendant, then unknown to them, and sought to determine his identity. A state trooper conducted a traffic stop immediately thereafter and identified defendant by examining his license and registration. The investigators then posted a copy of defendant’s driver’s license photograph on the wall of the investigation room. At the Rodriguez hearing, each of the investigators testified that they saw the posted photograph on many occasions thereafter in the course of their work, and were thus able to recognize and identify defendant when they began conducting visual surveillance of him. Based upon this testimony, the court concluded that the investigators’ identifications were confirmatory and that statutory notice was not required.
We agree with County Court that statutory notice was not required, but on a different ground. CPL 710.30 requires the People to serve notice upon the defendant of their intention to introduce “testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him [or her] as such” (CPL 710.30 [1] [b]). Certain identifications that fall within the scope of the statute but involve no possibility of undue suggestiveness or misidentification have been held to be exempt from the notice requirement, but these confirmatory identifications are limited to two well-defined scenarios that are inapplicable here (see People v Boyer, 6 NY3d 427, 431-432 [2006]; People v Rodriguez, 79 NY2d at 449-451; People v Wharton, 74 NY2d 921, 922-923 [1989]; People v Allah, 57 AD3d 1115, 1116-1117 [2008], lv denied 12 NY3d 780 [2009]). Nevertheless, defendant’s preclusion motion was properly denied, as the notice requirements of CPL 710.30 do not apply here.
The notice requirement applies to police-arranged identifications, and its purpose is to allow the defense an opportunity to inquire into whether misleading or suggestive procedures were used that could affect the accuracy of a later identification in court (see People v Gissendanner, 48 NY2d 543, 552 [1979]; People v Butler, 16 AD3d 915, 916 [2005], lv denied 5 NY3d *1411 786 [2005]). “A failure to appreciate this fundamental purpose, and, particularly, the distinction between an observation and an identification procedure, may result in the erroneous invocation of CPL 710.30 (1) (b) any time a witness sees a defendant on more than one occasion prior to trial” (People v Peterson, 194 AD2d 124, 128 [1993] [citations omitted], lv denied 83 NY2d 856 [1994]). The statute’s purposes are implicated only when the identifying witness has experienced “two distinct pretrial ‘viewings’ of a defendant” in which the witness first observed the defendant at the time or place of an offense or another relevant occasion, and then participated in “a separate, police-initiated, identification procedure, such as a lineup, showup or photographic array, which takes place subsequent to the observation forming the basis for the witness’s trial testimony and prior to the trial” (id. [emphasis omitted]). Critically, this second procedure “is not itself probative of defendant’s guilt or innocence but is intended merely to ‘establish! ] the identity of the criminal actor’ ” (id., quoting People v Gissendanner, 48 NY2d at 552). By contrast, notice of an eyewitness identification is not required “where the eyewitness has not previously made any out-of-court, police-initiated identification of the defendant in connection with that crime” (People v Butler, 16 AD3d at 916).
Here, no such identifications in connection with a prior crime were made. The initial identification of defendant by the state trooper who determined his identity by examining his driver’s license did not implicate CPL 710.30, as the trooper had not previously observed defendant and was identifying him for the purpose of future surveillance.[2] The identifications by the investigators who subsequently conducted that surveillance and observed defendant as he came and went from his home, school and storage unit met with other investigation subjects and participated in drug transactions likewise were not identification procedures with respect to prior crimes, but observations regarding new, independent activities and criminal offenses (see People v Peterson, 194 AD2d at 128-129). After completing this surveillance, the investigators did not participate in any pretrial procedures intended to establish the identity of the individual they had monitored, such as lineups or showups (see People v Gissendanner, 48 NY2d at 552). Instead, they directly identified defendant in court as the same person whom they had monitored as he participated in drug transactions — a circumstance that does not implicate the purposes of CPL 710.30 and therefore does not fall within its *1412 purview (see People v Jackson, 43 AD3d 488, 489-490 [2007], lv denied 9 NY3d 962 [2007]; People v Butler, 16 AD3d at 916-917; People v Rufin, 237 AD2d 866, 867 [1997]; People v Peterson, 194 AD2d at 128-129). Thus, no statutory notice was required.
Next, defendant challenges the admission of evidence pertaining to an uncharged drug sale. During jury selection, the People advised County Court that it had just been discovered that one of the recorded calls pertaining to a cocaine sale, for which defendant was charged, also contained discussion of a sale of ecstasy, for which defendant had not been charged. Defendant made a motion in limine to preclude the People from referring to any substance other than those named in the indictment, and the court denied the motion, ruling that “the evidence was inextricably entwined with the evidence in the case,” and denied defendant’s application for a Molineux! Ventimiglia proffer.
At trial, a witness testified about several transactions in which he purchased drugs from defendant, and the People played recordings of accompanying phone calls. The testimony included a phone call in which the witness asked to buy ecstasy from defendant, another in which he asked to purchase both ecstasy and cocaine, and a third in which defendant stated that he would no longer sell ecstasy to the witness. We agree with County Court that the references to ecstasy in the call that involved both drugs were “inextricably interwoven” in that they were “explanatory of the acts done or words used in the otherwise admissible part of the evidence” and “relat[ed] directly to the crime [s] charged such that the value of the evidence clearly outweighfed] any possible prejudice” (People v Nicholas, 130 AD3d 1314, 1316 [2015] [internal quotation marks and citations omitted]; see People v Ventimiglia, 52 NY2d 350, 359-361 [1981]). However, there was no such direct relationship as to the calls that pertained solely to ecstasy, nor was it determined that the probative value of the evidence outweighed its potential for prejudice (see People v Till, 87 NY2d 835, 836-837 [1995]; People v Nicholas, 130 AD3d at 1316). Nevertheless, this error was harmless, as the admissible evidence — which included numerous recorded calls pertaining to sales of heroin and cocaine as well as the coconspirators’ testimony implicating defendant — was overwhelming, and there was no significant probability that defendant would have been acquitted if the two calls pertaining to ecstasy had not been admitted (see People v Crimmins, 36 NY2d at 242).
*1413 Defendant was not deprived of a fair trial when County Court permitted the People to explain the definitions of conspiracy and narcotics sale during their opening statement. A prosecutor may make comments about the law during opening statements or summation so long as the law is accurately stated and “the court ma[kes] clear to the jury that it must accept the law as stated by the court” (People v Whitehead, 130 AD3d 1142, 1145 [2015], affd 29 NY3d 956 [2017]; see People v Bush, 75 AD3d 917, 920 [2010], lv denied 15 NY3d 919 [2010]). The prosecutor’s comments on conspiracy were accurate, and the court provided a prompt cautionary instruction that advised the jury to follow only the court’s instructions on the law (see People v Whitehead, 29 NY3d 956, 958 [2017]; People v Barnes, 80 NY2d 867, 868 [1992]). Defendant’s claim regarding the prosecutor’s similar remarks pertaining to narcotics sales was not preserved, as defendant’s counsel did not join an objection by counsel for some of his codefendants (see People v Buckley, 75 NY2d 843, 846 [1990]), and we perceive no reason to take corrective action in the interest of justice.
Contrary to defendant’s claim, County Court properly permitted Guiry to testify as an expert regarding the meaning of certain coded language used in the recorded phone calls. It is well established that the meaning of the specialized jargon used in drug transactions is not within the knowledge of a typical juror and is therefore an appropriate subject for expert testimony (see People v Brown, 97 NY2d 500, 505 [2002]; People v Blackman, 118 AD3d 1148, 1150 [2014], lv denied 24 NY3d 1001 [2014]; see also People v Inoa, 25 NY3d 466, 473 [2015]). Here, Guiry’s testimony regarding his extensive training and experience in narcotics investigations established his qualifications as a narcotics expert (see People v Hicks, 2 NY3d 750, 751 [2004]). Further, Guiry’s testimony as to the meaning of the terminology used in recorded phone calls did not usurp the function of the jury. The court appropriately limited the testimony’s scope, sustaining defense objections as necessary (compare People v Inoa, 25 NY3d at 473-475), and repeatedly instructed the jury that Guiry was testifying as to his opinions, and that the ultimate determination as to the meaning of the language was to be made by the jury. As part of the final charge, the court further instructed the jury that it should evaluate the believability and accuracy of Guiry’s testimony as it would that of any other witness, that the jury was free to reject his testimony, and that it did not constitute proof of defendant’s guilt (see People v Brown, 97 NY2d at 506).
As to defendant’s claim that a juror should have been discharged based upon an anonymous note received during the *1414 trial alleging certain improprieties, defendant initially objected to that juror’s continued presence on the jury, but later expressly stated that he wished the juror to remain. Likewise, defendant did not object when, later in the trial, County Court investigated a further issue pertaining to the same juror and advised counsel that it had found no misconduct. Defendant’s current claim that this juror should have been discharged is thus unpreserved (see People v Grimm, 107 AD3d 1040, 1040-1041 [2013], lv denied 21 NY3d 1042 [2013]), and no modification in the interest of justice is warranted.[3]
We find no merit in defendant’s claim that the People improperly vouched for two witnesses during the prosecutor’s summation. The remarks were made in direct response to credibility challenges raised during the defense summations and constituted fair comments on the evidence (see People v Pine, 82 AD3d 1498, 1502 [2011], lv denied 17 NY3d 820 [2011]). Defendant’s contention that the prosecutor improperly attempted to shift the burden of proof is unpreserved, as he did not object to the comments in question (see People v Mitchell, 129 AD3d 1319, 1321 [2015], lv denied 26 NY3d 1041 [2015]).
As for defendant’s challenges to the jury charge, County Court did not err in refusing to give a multiple conspiracy instruction, as the evidence established that defendant and the other alleged conspirators worked in coordination with one another to obtain and distribute narcotics, and “[t]here was no reasonable view of the evidence that there was any conspiracy narrower in scope than the single conspiracy charged in the indictment” (People v Brown, 142 AD3d 769, 771 [2016], lvs denied 28 NY3d 1123, 1125 [20,16]; see People v Leisner, 73 NY2d 140, 150 [1989]). Defendant also claims that two supplemental jury instructions given by the court, taken together, were improperly coercive. Before discharging jurors for the weekend on a Friday afternoon — the seventh day of the jury’s deliberations after 11 weeks of testimony — the court reminded them, sua sponte, that the next Monday would likely be the final day of deliberations as one of the jurors had a long-planned obligation, and asked the jury about its progress. The foreperson advised the court that he did not think it was reasonably likely that the jury would reach a verdict on all counts *1415 by the end of the day on Monday, but that a verdict had been reached on some counts. The court then, sua sponte, gave the jury a supplemental instruction that directed it, in summary, to continue deliberating on Monday as if deliberations were expected to continue beyond that day, to feel no pressure to reach a verdict on any additional counts, to deliberate with the goal of reaching a fair and just verdict on the remaining counts, and to do so without surrendering its honest convictions. The jury continued deliberating the following Monday and, during the afternoon, advised the court that it had not been able to reach a verdict on five counts. After consulting with counsel, the court delivered an Allen charge that closely tracked the language of the pattern instruction. Several hours later, when the jury continued to be unable to reach a verdict on the remaining charges, the court declared a mistrial as to those counts and accepted a partial verdict.
Defendant now contends that County Court erred in delivering the first supplemental instruction without consulting first with counsel. However, although he raised the same objection at trial, defendant has not, either then or now, provided any specific criticisms beyond his general claim that the charge was improperly coercive, nor indicated what changes, if any, he might have requested upon consultation. We do not find the charge improperly coercive; rather, it “was balanced and neutral in tone, and . . . did not urge any dissenting jurors to abandon their convictions and acquiesce in the opinion of the other jurors, attempt to coerce or compel the jurors to reach a particular verdict, or shame the jurors into reaching a verdict” (People v Coleman, 64 AD3d 787, 787 [2009], lv denied 13 NY3d 835 [2009]; see People v Hardy, 26 NY3d 245, 252 [2015]; People v Guerrier, 46 AD3d 937, 938-939 [2007], lv denied 9 NY3d 1034 [2008]). Any inference to the contrary is further undermined by the fact that the jury continued to deliberate and remained unable to reach a full verdict even after the court subsequently issued the Allen charge (see People v Anderson, 116 AD3d 499, 500 [2014], lv denied 24 NY3d 958 [2014]; compare People v Aponte, 2 NY3d 304, 309 [2004]).[4] In view of all of the circumstances, there was no error requiring reversal.
Finally, defendant contends that his sentence is harsh and excessive. We find no merit in his contention that his lengthy sentence was a punishment for exercising his right to trial (see *1416 People v Blond, 96 AD3d 1149, 1153-1154 [2012], lv denied 19 NY3d 1101 [2012]; People v Beauharnois, 64 AD3d 996, 1001 [2009], lv denied 13 NY3d 834 [2009]). Although there is a very-substantial discrepancy between defendant’s ultimate sentence and those proposed in two plea offers that he rejected, the offers contemplated that defendant would plead guilty to one or two felonies in satisfaction of all of the charges against him, while his sentence after trial reflected convictions for 15 crimes, including seven class A-I felonies. Thus, neither a comparison with the rejected offers nor the agreed-upon sentences that several of his coconspirators accepted as part of bargains involving guilty pleas to one or two offenses demonstrates that defendant’s sentence was premised on vindictiveness. County Court’s discussion of its reasons for imposing the sentence further reveals that a lengthy sentence is thoroughly justified, based upon such factors as the number and seriousness of defendant’s offenses, the large scale of the drug operation in which he was engaged upon his arrest, and the fact that at the age of 35, defendant had spent most of his adult life in prison and, in the brief intervals when he was released, had quickly returned to crimes that often involved the sale of drugs. Nevertheless, after careful consideration of defendant’s age and all of the relevant factors, we find it appropriate to reduce the sentence in the interest of justice by directing that defendant’s sentences on his convictions for criminal sale of a controlled substance in the first degree (counts 92, 105, 137 and 172) shall run concurrently to one another; that his sentences on his convictions for attempted criminal possession of a controlled substance in the first degree (counts 177 and 187) and criminal sale of a controlled substance in the second degree (counts 161, 173 and 182) shall run concurrently to one another and consecutively to the previously imposed sentences; that his sentences for criminal sale of a controlled substance in the third degree (counts 169 and 185) and criminal possession of a controlled substance in the third degree (count 181) shall run consecutively to one another and to the previously imposed sentences; and that his sentences for conspiracy in the second degree (count 1), operating as a major trafficker (count 258) and attempted criminal possession of a controlled substance in the third degree (count 178) shall run concurrently to one another and to the previously imposed sentences, resulting in an aggregate prison term of 55 years to life (see People v Powell, 12 AD3d 932, 933 [2004], lv denied 4 NY3d 802 [2005]; People v Harris, 288 AD2d 610, 619 [2001], affd 99 NY2d 202 [2002]).
Defendant failed to preserve his claims that Penal Law § 220.77 is unconstitutionally vague (see People v Lancaster, *1417 143 AD3d 1046, 1052 [2016], lv denied 28 NY3d 1147 [2017]), that the charges against him for criminal sale of a controlled substance and the charge of conspiracy in the second degree were duplicitous (see People v Whitehead, 130 AD3d at 1143), that a judge who issued a sealing order was unauthorized to do so (see People v Buckley, 75 NY2d at 846), and that some of Guiry’s testimony constituted inadmissible hearsay (see id.). We decline to take corrective action in the interest of justice as to these issues. Defendant’s remaining contentions, including his claims that County Court erred in limiting his cross-examination of certain witnesses and in failing to exclude a witness from the courtroom, have been examined and found to be without merit.
Peters, P.J., McCarthy, Rose and Aarons, JJ., concur.
Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by resentencing defendant as directed herein to an aggregate prison term of 55 years to life, and, as so modified, affirmed.

. Defendant was tried with codefendants Richard Collier, Marqúese Johnson, Jamel Pearson, Anthony Taylor and Michael Williams. This Court has affirmed codefendant Franklin Russell’s guilty plea (People v Russell, 143 AD3d 1188 [2016]).

. Defendant does not contend that he was misidentified.

. Defendant’s claim that County Court’s response to an anonymous note from a juror was inadequate is likewise unpreserved (see People v Robinson, 121 AD3d 1179, 1181 [2014]), and his remaining claim regarding one of the alternate jurors is moot, as none of the alternates participated in deliberations (see People v Haardt, 129 AD3d 1322, 1322 [2015]; People v Rivera, 7 AD3d 358, 359 [2004], lv denied 3 NY3d 741 [2004]).

. Defendant’s only objection to the Allen charge is the assertion that it became improperly coercive when taken in combination with the previous supplemental instruction — a claim that necessarily fails based upon our conclusion herein.