■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERMAINE JOHNSON, Appellant. [53 NYS3d 412]—

Garry, J. Appeals (1) from a judgment of the Supreme Court (McDonough, J.), rendered May 2, 2013 in Albany County, upon a verdict convicting defendant of the crimes of criminal possession of marihuana in the first degree, assault in the second degree, unlawful fleeing from a police officer in a motor vehicle in the third degree, reckless driving and resisting arrest, and (2) from a judgment of said court, rendered August 28, 2013 in Albany County, which resentenced defendant on his conviction of assault in the second degree.

A state trooper stopped defendant's vehicle after seeing him change lanes illegally. Upon smelling marihuana, the trooper directed defendant to get out of the car, and defendant did so. When the trooper told him that he intended to search the vehicle, defendant charged the trooper, punched him in the head and fled in the vehicle. A car chase ensued in which defendant traveled at speeds over 100 miles per hour, ran red lights, nearly caused several accidents and ultimately crashed into several parked cars. Defendant then fled on foot and was caught and arrested after a struggle with several pursuing officers. A search of his vehicle revealed a bag containing what was later identified as over 10 pounds of marihuana. Defendant was charged with several crimes and, following a jury trial, convicted of criminal possession of marihuana in the first degree, assault in the second degree, unlawful fleeing from a police officer in a motor vehicle in the third degree, reckless driving and resisting arrest. He was sentenced to an aggregate prison term of 4½ years with three years of postrelease supervision. Defendant appeals.

Before trial, the People moved to preclude defendant from cross-examining the trooper about a previous reprimand. Defendant opposed the motion, arguing that he was entitled under *Brady v Maryland* (373 US 83 [1963]) to disclosure of that part of the trooper's personnel records pertaining to the reprimand so that he could determine whether it was relevant to his cross-examination. When Supreme Court inquired as to the factual basis for this request, defense counsel stated that the request was based on "gossip among defense lawyers" and upon a transcript of the trooper's testimony in a prior case, in which he confirmed that he had previously been reprimanded for a reason unspecified, other than that it did not relate to search and seizure. Supreme Court did not find this to constitute an adequate basis for disclosure, and declined to direct the People to turn over the records.

The personnel records of police officers, including documents pertaining to misconduct or violations of rules, are confidential and are not subject to inspection or review, as pertinent here, "except as may be mandated by lawful court order" (Civil Rights Law § 50-a [1]; *see Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs.*, 73 NY2d 26, 31-32 [1988]). Upon "a clear showing of facts sufficient to warrant . . . review," a judge may issue an order directing the records to be sealed and sent to the judge for an in camera review, after which the judge shall order disclosure of any records found to be relevant and material (Civil Rights Law § 50-a [2];

*see* Civil Rights Law § 50-a [3]). Defendant now argues that Supreme Court erred in failing to conduct such an in camera review. However, it is conceded that counsel failed to request such a review at trial, and instead asked only that Supreme Court order the records to be turned over directly. To the limited extent that the request may nevertheless be deemed preserved, it has not been shown that in camera review was warranted, given defendant's failure to show a good faith factual predicate for the request (*see People v Darrell*, 145 AD3d 1316, 1319-1320 [2016]; *Matter of Dunnigan v Waverly Police Dept.*, 279 AD2d 833, 834 [2001], *lv denied* 96 NY2d 710 [2001]; *see also People v Gissendanner*, 48 NY2d 543, 550-551 [1979]).

Supreme Court did not commit reversible error by denying defendant's challenge for cause on the ground that a juror's "state of mind [was] likely to preclude [her] from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b]). During voir dire, the juror stated that, several years previously, she had called the police after seeing a man assault a woman and throw her to the ground. Asked whether anything about this experience would affect her judgment in defendant's case, the juror initially expressed some uncertainty. However, after further colloquy with counsel and the court, she stated that she was comfortable serving on the jury, confirmed that the previous experience would not affect her ability to evaluate the evidence, and repeatedly affirmed without equivocation that she would be able to be fair and impartial. These unambiguous assurances were sufficient to "dispel any doubt as to equivocation [and] assure an impartial jury" (*People v Chambers*, 97 NY2d 417, 419 [2002]; *see People v Warrington*, 28 NY3d 1116, 1120-1121 [2016]; *People v Williams*, 63 NY2d 882, 884-885 [1984]).

Next, defendant contends that the trial evidence was legally insufficient and that the verdict is against the weight of the evidence, in that the conviction for assault in the second degree was not supported by evidence that the trooper was physically injured, and the conviction for criminal possession of marihuana in the first degree was not supported by evidence that the weight of the marihuana was accurately determined. The Penal Law defines physical injury for this purpose as an "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). Substantial pain, in turn, "must be more than slight or trivial but need not be severe or intense" (*People v Hicks*, 128 AD3d 1221, 1222 [2015] [internal quotation marks and citations omitted], *lv denied* 26 NY3d 930 [2015]). The

trooper testified that defendant was sitting on the bumper of the patrol car and the trooper was about six feet away, between defendant and his vehicle, when the trooper informed defendant that his vehicle would be searched. Defendant then got up with a "crazed, dazed look in his eye," ran toward the trooper and punched him in the side of the head, sending the trooper into the guide rail. The trooper stated that he saw a brief flash of light when he was struck, but did not lose consciousness. After defendant's arrest, the trooper went to the emergency room because of a headache, pain and "tenderness" in his head. He was diagnosed with a concussion and instructed to stay out of work until his symptoms abated.[1] For several days, he had what he described as a "substantial headache," which made it difficult to sleep and to lie down. He testified that he took Tylenol and Advil for pain, and that he also lost his appetite for several days.

The treating emergency room physician testified that the trooper complained of head trauma, headache and having seen a flash of light upon impact. The physician described the diagnosis of a concussion as "straightforward," stating that radiological findings were not required and that the trooper's symptoms of head trauma and persistent headache "by definition . . . make the diagnosis." The physician stated that a primary concern following a concussion is to avoid the risk of a second head injury, known as second impact syndrome, and that the trooper was directed to stay out of work for this reason until his symptoms were gone. He further stated that the flash of light seen by the trooper was a common finding in head injuries and could have been a sign of mechanical trauma that caused a discharge of neurons in the occipital lobe of his brain.

Factors taken into account in evaluating whether a physical injury has occurred "include the injury viewed objectively, the victim's subjective description of the injury and his or her pain, and whether the victim sought medical treatment" (*People v Hicks*, 128 AD3d at 1222 [internal quotation marks, brackets and citations omitted]). Here, we are satisfied that the evidence of physical injury was legally sufficient to support the verdict (*see People v Newman*, 71 AD3d 1509, 1509-1510 [2010], *lv denied* 15 NY3d 754 [2010]; *People v Williams*, 46 AD3d 1115, 1116-1117 [2007], *lv denied* 10 NY3d 818 [2008]; *People v James*, 2 AD3d 291, 291 [2003], *lv denied* 2 NY3d 741 [2004]; *People v Porter*, 305 AD2d 933, 933-934 [2003], *lv denied* 100

---

1. The two days immediately following the incident were scheduled days off, and the trooper did not ultimately miss work.

NY2d 586 [2003]), and that defendant's assault conviction was not against the weight of the evidence (see *People v Williams*, 46 AD3d at 1117; see also *People v Hendrix*, 132 AD3d 1348, 1349 [2015], *lv denied* 26 NY3d 1145 [2016]).

As to the conviction for criminal possession of marihuana in the first degree, we reject defendant's contention that the People failed to prove beyond a reasonable doubt that the substance weighed more than 10 pounds (see Penal Law § 221.30) because they did not introduce calibration records or other proof of the accuracy of the scale on which the recovered marihuana was weighed.[2] A forensic scientist testified that he used a precision balance to weigh the marihuana and found its weight to be 4,703 grams, or approximately 10.3 pounds. He testified that he weighed only the substance, not the plastic bags in which it was packed, and that he had previously conducted hundreds of such weight tests. The scientist did not testify that he calibrated the scale before weighing the marihuana, but he was not asked whether he had done so, and there was no evidence of a malfunction or of any other reason to doubt the reliability of the scale or the procedures used. Accordingly, the People were not required to introduce evidence of the scale's accuracy, and the verdict was not against the weight of the evidence (see *People v Parker*, 84 AD3d 1508, 1510 [2011], *lv denied* 18 NY3d 927 [2012]; see also *People v Singleton*, 135 AD3d 1165, 1167-1168 [2016], *lv denied* 27 NY3d 969 [2016]).

Supreme Court did not err in denying defendant's motion to preclude an investigator's testimony identifying defendant's voice on an audio recording on the ground that the People failed to give notice of the identification pursuant to CPL 710.30 (1) (b). The People must provide timely notice to a defendant when they "intend to offer at a trial . . . testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identi-fied him as such" (CPL 710.30 [1] [b]). The purpose of this requirement is to provide the defendant with an opportunity to inquire into whether misleading or suggestive procedures were used in the prior identification that could affect the reliability of a subsequent in-court identification (see *People v Gissendan-*

---

2. Defendant failed to preserve his legal sufficiency challenge on this ground by raising it specifically in his trial motion for dismissal, but this Court's weight of the evidence review necessarily requires us to determine whether the elements of each crime were proven beyond a reasonable doubt (see *People v Collier*, 146 AD3d 1146, 1147-1148 [2017]; *People v Thiel*, 134 AD3d 1237, 1238 [2015], *lv denied* 27 NY3d 1156 [2016]).

*ner*, 48 NY2d at 552; *People v Butler*, 16 AD3d 915, 916 [2005], *lv denied* 5 NY3d 786 [2005]). Thus, the notice requirement does not apply to every in-court identification by a witness who observed a defendant more than once before the trial. Instead, notice is required only when the identifying witness has experienced "two distinct pretrial 'viewings' of a defendant" in which the witness first observed the defendant at the time or place of an offense or another relevant occasion, and then participated in "a separate, police-initiated, *identification* procedure, such as a lineup, showup or photographic array, which takes place subsequent to the observation forming the basis for the witness's trial testimony and prior to the trial" (*People v Peterson*, 194 AD2d 124, 128 [1993], *lv denied* 83 NY2d 856 [1994]).

Here, the investigator testified that he interviewed defendant shortly after his arrest and thus became familiar with his voice. Based upon that familiarity, he recognized defendant's voice in a recording of a subsequent telephone call made from the correctional facility where defendant was then being held, and identified him in court as the speaker on the recording. The investigator's initial interview with defendant was not a police-initiated identification procedure that could have raised a possibility of undue suggestiveness, and no such procedure took place after the investigator listened to the recording. This evidence does not fall within the scope of CPL 710.30, and no statutory notice of the investigator's identification of defendant as the speaker was required (*see People v Butler*, 16 AD3d at 916-917; *People v Rufin*, 237 AD2d 866, 867 [1997]; *People v Peterson*, 194 AD2d at 128-129).

We agree with defendant that Supreme Court erred in permitting the People to elicit testimony about defendant's invocation of his right to silence and to comment on that testimony in summation. "[I]t is axiomatic that when a defendant invokes his or her constitutional right against self-incrimination, the People may not use his or her silence against him or her on their direct case" (*People v Goldston*, 6 AD3d 736, 737 [2004]; *see People v Hunt*, 18 AD3d 891, 892 [2005]). The principle applies when a defendant unequivocally states his or her desire to halt all questioning, even if he or she has previously responded to other questions (*see People v Von Werne*, 41 NY2d 584, 588 [1977]; *People v Hunt*, 18 AD3d at 892). A State Police investigator testified at trial that he interviewed defendant after his arrest and read him his *Miranda* rights, which defendant stated that he understood. Defendant then willingly answered a series of questions about various topics.

However, when asked if he had punched or pushed the trooper, defendant responded that "he didn't want to say any more." During summation, the prosecutor remarked upon this testimony, noting that when defendant was asked about striking the trooper, he had not denied that he had done so or offered an explanation, but instead had stated that he did not want to say anything else. Defendant's counsel objected twice to these remarks, but was overruled. Contrary to the People's assertion, defendant's statement that he did not want to say any more was an "unequivocal and unqualified invocation of [the] right" to remain silent (*People v Horton*, 46 AD3d 1225, 1226 [2007], *lv denied* 10 NY3d 766 [2008]; *see People v Whitley*, 78 AD3d 1084, 1085 [2010]). Accordingly, the testimony should not have been admitted, and defendant's objections should not have been overruled.

Nevertheless, upon consideration of all of the evidence, we find that the error was harmless. The evidence of defendant's guilt on his various convictions was overwhelming and, in large part, uncontroverted. Relative to the assault conviction, the evidence included not only the trooper's testimony describing the encounter with defendant and his resulting injuries and diagnosis, but also the audio recording of defendant's telephone call from the correctional facility, in which defendant's wife said that she had heard that defendant struck the trooper in the face, and defendant responded, "I thumped the officer."[3] As we find that there is no reasonable possibility that the error contributed to defendant's convictions, reversal is not required (*see People v Capers*, 129 AD3d 1313, 1318 [2015], *lv denied* 27 NY3d 994 [2016]; *People v Johnson*, 106 AD3d 1272, 1277-1278 [2013], *lv denied* 21 NY3d 1043 [2013]; *see generally People v Crimmins*, 36 NY2d 230, 237 [1975]).

Peters, P.J., Devine, Mulvey and Aarons, JJ., concur. Ordered that the judgments are affirmed.

---

**3.** Upon appeal defendant argues that the audio recording was not clear enough to permit the conclusion that this was what he said. However, no such argument was raised in Supreme Court; defendant's trial counsel and the prosecutor agreed that the audio recording was audible before it was admitted.