People v Stover (2019 NY Slip Op 05726)





People v Stover


2019 NY Slip Op 05726


Decided on July 18, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 18, 2019

110092

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
RAEKWON STOVER, Appellant.

Calendar Date: June 6, 2019

Before: Garry, P.J., Egan Jr., Clark, Devine and Pritzker, JJ.


Paul J. Connolly, Delmar, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from a judgment of the County Court of Schenectady County (Sira, J.), rendered December 18, 2017, upon a verdict convicting defendant of the crime of assault in the second degree.
On March 4, 2017, defendant was involved in a physical altercation with another inmate (hereinafter the victim) while housed at the Schenectady County Correctional Facility. As a result of this conduct, defendant was charged by indictment with assault in the second degree. Following a jury trial, defendant was convicted as charged and was later sentenced to five years in prison followed by three years of postrelease supervision. Defendant appeals.
Initially, we find that County Court properly denied defendant's motion to dismiss the indictment on the ground that the grand jury proceeding was defective for failure to conform to the requirements of CPL article 190. Dismissal of an indictment on this basis "is a drastic, exceptional remedy and should thus be limited to those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the [g]rand [j]ury" (People v Sutherland, 104 AD3d 1064, 1066 [2013] [internal quotation marks and citations omitted]; see People v Huston, 88 NY2d 400, 409 [1996]). Upon our review of the grand jury minutes, we find no irregularities or improprieties warranting dismissal of the indictment (see CPL 190.25, 190.30; People v Newman, 169 AD3d 1157, 1157-1158 [2019]; People v Malloy, 166 AD3d 1302, 1304 [2018], lv denied 32 NY3d 1180 [2019]).[FN1]
Defendant next asserts that his conviction was not supported by legally sufficient evidence and was against the weight of the evidence, in that the People failed to establish that the victim suffered a physical injury or that defendant intended to cause such injury. Although defendant failed to preserve his legal sufficiency claim as to the element of intent, we must nevertheless determine whether all of the elements of the charged crime were proven beyond a reasonable doubt as part of our weight of the evidence review (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Johnson, 150 AD3d 1390, 1394 n 2 [2017], lv denied 29 NY3d 1128 [2017]). In this regard, a person is "guilty of assault in the second degree when, 'having been charged with or convicted of a crime and while confined in a correctional facility,' he or she intended to cause physical injury to another person and does cause such injury" (People v Ford, 156 AD3d 1242, 1243 [2017] [brackets omitted], lv denied 31 NY3d 1013 [2018], quoting Penal Law § 120.05 [7]). As pertinent here, a physical injury may be established by evidence that the victim suffered "substantial pain" (Penal Law § 10.00 [9]), and "while slight or trivial pain is insufficient, the pain need not, however, be severe or intense to be substantial" (People v Williams, 46 AD3d 1115, 1115 [2007] [internal quotation marks, brackets and citations omitted], lv denied 10 NY3d 818 [2008]; see People v Diaz, 163 AD3d 110, 113 [2018], lv denied 32 NY3d 1110 [2018]). In determining whether a physical injury has occurred, factors considered "include the injury viewed objectively, the victim's subjective description of the injury and his or her pain, and whether the victim sought medical treatment" (People v Hicks, 128 AD3d 1221, 1222 [2015] [internal quotation marks, brackets and citation omitted], lv denied 26 NY3d 930 [2015]; accord People v Johnson, 150 AD3d at 1393). As to intent, it is well established that a defendant's intent may be inferred from the totality of the circumstances presented and the natural and probable consequences of his or her actions (see People v Steinberg, 79 NY2d 673, 684-685 [1992]; People v Coleman, 151 AD3d 1385, 1386 [2017], lv denied 29 NY3d 1128 [2017]).
At trial, the parties stipulated that defendant had been confined to the correctional facility on an unrelated charge at the time of the incident. As to the remaining elements of the crime, the People presented a video of the attack, the victim's medical records and photographs of his injuries, and the testimony of multiple correction officers and an investigator with the District Attorney's office. Video footage of the incident taken from the facility's security system was played for the jury. The video shows defendant, as identified by multiple officers, approach the victim from behind, as the victim is seated at a table, and punch him with a closed fist [FN2]. The victim responds only by blocking two of defendant's three punches. Following the attack, the victim immediately places a hand on his face and retrieves an item — presumed to be a magazine — from a cell and hands it to defendant. The victim then, while continuing to hold his head, cleans up blood from the table and floor where he had been sitting. A correction officer testified that he later discovered the victim in the shower room and observed blood dripping down the victim's face from a laceration above his right eye. It did not appear that he had slipped and fallen while showering, as his clothing was dry. Correction officers thereafter checked the hands of all inmates in the area for signs of trauma, indicating involvement in a fight. Only defendant's hands appeared red and swollen. The victim was later sent to a hospital for evaluation and treatment.
Hospital records reveal that the victim reported having been punched in the face by another inmate. He indicated pain levels of 4 and 9 on a scale of 10, and required pain medication and five stitches to close the laceration above his right eye, which had swelling. No further testing was done at that time. On March 7, 2017, three days after the incident, an X ray of the victim's face was taken, which showed an injury of the "[victim's] right orbit compatible with a mildly displaced fracture." A CT scan conducted on March 17, 2017 indicated that "acute fractures [were] seen involving the [victim's] right lateral orbit wall . . . [and] [a]cute mildly comminuted fractures [were] noted involving the right anterior and lateral maxillary sinus walls." A correction officer testified that the victim did not appear to have any injuries to his face upon his arrival at the correctional facility three days prior to the incident; photographs taken during the booking process similarly revealed no injuries at that time. No evidence was presented [*2]indicating that the victim had been otherwise injured between the time of the incident and the dates of the medical testing. The victim and defendant did not testify.
To the extent that defendant preserved the claim of legal insufficiency, viewing the facts in a light most favorable to the People, there is a "valid line of reasoning and permissible inferences" from which a rational jury could have found the elements of the crime proven beyond a reasonable doubt (People v Travis, 273 AD2d 544, 547 [2000] [internal quotation marks and citation omitted]; see CPL 120.05 [7]; see People v Jennings, 20 AD3d 777, 777-778 [2005], lv denied 5 NY3d 829 [2005]). In reviewing the weight of the evidence, this Court, after determining that a different verdict would not be unreasonable, "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]). Viewing the evidence in a neutral light and deferring to the jury's credibility assessments, we find that defendant's conviction is supported by the weight of the evidence (see People v Chiddick, 8 NY3d 445, 446 [2007]; People v Mamadou, 172 AD3d 1524, 1525-1526 [2019]; People v Johnson, 150 AD3d at 1393-1394; People v Alexander, 127 AD3d 1429, 1431 [2015], lv denied 25 NY3d 1197 [2015]).
County Court did not err in admitting the victim's March 7, 2017 medical records into evidence by certification. As pertinent here, properly certified medical records of "a department or bureau . . . of the state . . . relating to the condition or treatment of a patient" are admissible by certification under the business records exception to the hearsay rule and constitute prima facie evidence of the facts contained therein (CPLR 2306 [a]; see CPLR 4518 [a], [c]; Maxcy v County of Putnam, 178 AD2d 729, 730 [1991], lv dismissed 80 NY2d 826 [1992]). Such records may be certified "by the head of the . . . department or bureau . . . of the state, or by an employee delegated for that purpose" (CPLR 4518 [c]). Here, the record reflects that the correctional facility contracts with Mobile Imagining Ltd., a medical imaging company, in its regular course of business as part of its medical care of inmates. The medical record at issue, an X-ray report of the victim's right eye, was produced by Mobile Imaging Ltd. at the correctional facility and at its request. Contrary to defendant's contentions, the certification accompanying the record complied with CPLR 4518 (c), as it was executed by the correctional facility's designated custodian of medical records.
Next, defendant claims that he was improperly denied a missing witness charge as to the victim, who refused to testify. Where warranted, a missing witness charge permits "a jury to draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events" (People v Savinon, 100 NY2d 192, 196 [2003]). Here, defendant's request was properly denied. The victim, who had been subpoenaed by the People and appeared in court, refused to testify despite being admonished by County Court that he could be held in contempt as a result (see People v Baldwin, 35 AD3d 1088, 1091-1092 [2006]; People v Washington, 21 AD3d 648, 649 [2005], lv denied 6 NY3d 839 [2006]).
Finally, we find no merit in defendant's argument that the sentence imposed was harsh and excessive. Considering his criminal history and failure to accept responsibility, as well as the fact that he was confined at the time of the crime on a separate charge, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence, which was below the maximum allowed (see Penal Law § 70.02; People v Wright, 160 AD3d 1110, 1113 [2018], lv denied 31 NY3d 1154 [2018]; People v Clark, 159 AD3d 1148, 1148 [2018]).
Egan Jr., Clark, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: To the extent that defendant requests that this Court release the grand jury minutes to his appellate counsel to allow supplemental briefing on this issue, such relief should have been requested by a motion on notice to the People requesting such disclosure in furtherance of the appeal (see generally Rules of App Div, All Depts [22 NYCRR] § 1250.4).

Footnote 2: A third individual who is visible in the video was deceased at the time of trial.